## *RENNIE v. GIBSON.

No. 8996.   Opinion Filed July 1, 1919.

Rehearing Denied Sept. 9, 1919.

(Syllabus by the Court.)

### 1. Covenants—Limitation of Actions.

Covenants of "seisin" and "good right to convey" are synonymous, and, if broken at all, are broken when made, yet where the grantee takes and remains in the undisturbed possession of land conveyed by a general warranty deed, which is afterwards cancelled by the final judgment of a court of competent jurisdiction, the statute of limitations does not begin to run in favor of the grantor on the warranty of the title until after the date of such judgment.

### 2. Same — Warranty Deed — Judgment — Conclusiveness.

In an action where there is a recovery of land, or any interest therein. adverse to any warranty deed thereto, and where the grantor was a party to the action, the record of such judgment is conclusive evidence of the paramount title of the adverse claimant.

### 3. Same—Breach of Warranty—Notice to Grantor.

Under section 1166, Rev. Laws 1910, where an action is brought against a grantee to recover real estate conveyed to him by a warranty deed, and the grantor is made a party to the action, and is duly served with summons therein. the grantee is relieved of the necessity of giving the grantor written notice that such action has been brought.

### 4. Costs—Allowance to Plaintiff.

Where it is not otherwise provided by statute, costs shall be allowed, of course, to the plaintiff upon a judgment in his favor in actions for the recovery of money only, or for the recovery of specific real or personal property.

### 5. Covenants—Breach of Warranty—Costs.

The grantee in an action for breach of a covenant of warranty contained in a deed executed and delivered in 1905 for certain lands in that part of Oklahoma then known as Indian Territory can recover costs and necessary expenses, including reasonable attorney's fees incurred. in a bona fide defense, or assertion of his title, though there was no express agreement by grantor in addition to his covenant to pay such expenses.

Error from District Court, Garvin County ; F. B. Swank, Judge.

Action by John W. Gibson against Albert Rennie. From judgment for plaintiff, defendant brings error. Affirmed.

Jno. A. McClure, Marion Henderson, and Yerker E. Taylor, for plaintiff in error.

*Appealed to the Supreme Court of the United States.

O. W. Patchell and Earl Q. Gray, for defendant in error.

PITCHFORD, J. This action was commenced on December 2, 1913, by the defendant in error as plaintiff, against the plaintiff in error as defendant, in the district court of Garvin county, Okla. The parties for convenience will be designated as they appeared in the court below. In his petition, plaintiff alleged that on or about the 24th day of April, 1905, the defendant, by a general warranty deed of that date, in consideration of $3,500, conveyed to the plaintiff certain described real estate situated in Pontotoc county, Okla.; that in an action in the United States court for the Eastern District of Oklahoma, wherein the United States was plaintiff and the plaintiff and defendant herein were defendants, it was adjudged by the court that the title to said lands was at all times vested in the United States and the Choctaw Nation, and the court further decreed the cancellation of all deeds attempting to convey title to the same. Plaintiff further alleged that the defendant at no time had any title to convey, and this action is brought to recover on breach of the warranty. Defendant demurred to plaintiff's petition. The demurrer was overruled, and the defendant thereupon filed his answer.

The proof in the case discloses that during the year 1901 Mrs. Elliott and Mrs. Durkee, claiming to be entitled to citizenship in the Choctaw Nation, made application for enrollment as Mississippi Choctaw Indians. At that time they were residing upon the land herein involved. They failed to get on the rolls, and desiring to purchase the lands, arrangements were made with the defendant, Albert Rennie, to devise ways and means by which the purchase could be made. Thereupon the defendant arranged with one Hybarger whereby the latter was to be appointed administrator of one Wesley Hoparkentubbi, a deceased Choctaw. After being appointed as such administrator, Hybarger filed upon these lands for the said Wesley Hoparkentubbi, deceased. Thereafter it appears the defendant purchased from Isabel Hoparkentubbi and Sisley Homer their interests in the said allotment, they claiming to be the only surviving heirs at law of the said deceased. The defendant claims that the lands were bought for Mrs. Durkee and Mrs. Elliott, and he furnished a portion of the consideration, and in order to secure him in the amount so advanced for them, the deed was taken in his name. Thereafter, Mrs. Durkee and Mrs. Elliott borrowed certain sums from Henry M. Beard, and in order to secure the payment of these

sums, it seems, directed the defendant to execute a deed to Mr. Beard covering the lands in question. While it does not appear that the defendant was paid the amount of his outlay by this last transaction, we are to presume, however, that he was. After the deed was executed and delivered to Beard, the lands were placed for sale in the hands of Hybarger, Moore & Paul, real estate agents, who negotiated the sale of the same to the plaintiff. The legal title at that time being in Beard, he refused to execute a deed to any one except the defendant, from whom he had received the deed. Beard then executed a deed to the defendant, and the defendant executed and delivered to the plaintiff a general warranty deed. Upon the delivery of this deed, the plaintiff delivered his check for $3,500 to the defendant. This check was given to Mr. Moore, who immediately turned the same over to the defendant, there being present at the time the plaintiff, defendant, and Mr. Moore.

On the 19th day of March, 1909, there was filed in the United States court at Muskogee an action against the plaintiff, defendant, and others on the part of the United States; the petition seeking the cancellation of the allotment of Wesley Hoparkentubbi, deceased, on the ground that fraud had been practiced by the administrator, Hybarger, and others, in that the said Wesley Hoparkentubbi had died prior to the 25th day of September, 1902, and was therefore not entitled to enrollment as a citizen of the Choctaw Nation and was not entitled to share in the lands of said nation. After being served with summons, the plaintiff notified the defendant orally to defend said action and to pay all costs thereof as he had in his warranty agreed to do. Answers were filed in the United States District court by both plaintiff and defendant; the same attorney appearing for each. The federal court rendered judgment canceling the said allotment on the grounds set forth in the petition. No appeal was taken from this judgment, and the plaintiff herein was permitted to buy the land from the government at the appraised value, $1,011. At the trial of the cause in the district court, the jury returned a verdict in favor of the plaintiff for $1,519.11, whereupon the defendant moved for judgment non obstante veredicto, which motion was overruled by the court. The defendant then filed motion for a new trial, which was overruled and defendant appeals. The assignments of error are classified as follows.

"First. That the court erred in overruling the special demurrer of the defendant to plaintiff's petition.

"Second. That it was error to admit evidence of the voluntary payment of costs upon the judgment of the United States court.

"Third. That the court erred in sustaining the objection of the plaintiff to competent and relative questions as to what became of the money that the plaintiff paid for the land.

"Fourth. That the court erred in refusing to instruct the jury as requested by the defendant.

"Fifth. That it was error to admit evidence as to the amount of attorney's fee."

We shall treat the assignments of error in the order named.

One of the contentions of the defendant is that the deed was executed and delivered to the plaintiff prior to statehood, and, the covenant of seisin being broken on the delivery of the deed, the statute of limitations was set in motion, and more than five years having elapsed before the institution of the present action, the same is barred. We cannot agree with this view of the defendant. The covenant warranting the title was not broken, so as to start the running of the statute, until the title of the plaintiff had been canceled by the decree of court. Had the plaintiff failed to gain possession of the land by reason of the defect in the title, then the covenant of seisin would have been broken, and he could then immediately have proceeded against the defendant for such breach. So far as the questions herein involved are concerned, the laws of Arkansas in force in the Indian Territory at the date of the deed herein, and the laws of Oklahoma at the date of the trial of this cause in the lower court, are not in conflict. If it should be admitted that the covenant of seisin was purely personal, and did not run with the land, and was broken as soon as made, in our judgment, the statute of limitations would not begin to run until the grantee had notice of the breach. The petition is not susceptible of the construction placed upon it by the defendant, nor can any one justly infer, merely because of the statement in the petition that the United States court had canceled the allotment of Wesley Hoperkentubbi, and that the defendant was not lawfully seised of the lands at the date of the deed, that the plaintiff thereby confessed full knowledge that the title to the lands was at that time in the Choctaw Nation and the United States, and that the defendant had no right to convey. In Brawley v. Copelin, 106 Ark. 256, 153 S. W. 101, it is said:

"The effect of a judgment evicting a grantee in a deed containing a covenant that the land is free from incumbrances is that the grantor never had any title."

It nowhere appears that the plaintiff had the least intimation or suspicion of any defect in the title conveyed to him by the defendant prior to the action filed in the United States court in Muskogee. Probably the contention of the defendant would have been successful in the early days of English jurisprudence. In ancient times, livery of seisin, which means only delivery of possession, was purely ceremonial and symbolical. Where it was sought to transfer the title, the vendor and vendee, with witnesses, would enter upon the land to be conveyed, and there the vendor would solemnly hand to the vendee a clod of earth or a twig. That constituted a livery in deed. However, there were occasions when it was not found convenient to go upon the lands to be sold; then the ceremony of conveyance might be performed at some place in view of the premises. This livery of possession was known as livery in law, and was equally as valid as that performed on the land itself; but, in order to complete the conveyance, it was required that the vendee enter upon the premises within the lifetime of the vendor; hence we have had handed down to us covenants which go with the land and covenants which are personal. At that time no provision was made for recording titles.

In Logan v. Moulder, 1 Ark. 313, 33 Am. Dec. 338, the court said:

"The vendee is supposed to rely on the vendor's deed, and, if he suspect the title to be defective, he is not bound to wait until he is lawfully evicted, but may commence suit at any time, and maintain his action, unless the vendor show he has performed the condition of his bond. What is that condition? The vendor has covenanted he had a good right and lawful authority to convey, which is equivalent to a covenant of seisin; and that being the case, the law will not permit him to shift the responsibility from his own shoulders on to those of the vendee.' It is immaterial in whom the title is vested; the grantor has declared that it vests in him, and he is bound by his deed, and the legal presumption arising from it, to show what title he possessed, when his grantee questions it in a court of justice. His authority to execute the covenant is derived from the legal interest he had in the claim, and where there is no right or title there can be no authority to sell. It is therefore unnecessary for the plaintiff in declaring on a covenant of seisin, where a defendant binds himself that he has good right, full power, or lawful authority to grant, to allege eviction, in order to maintain the action, for the covenant is broken, if at all, the very moment it is executed, and a right of action accrues instantly upon the

breach of it. All covenants that are not prospective, and that do not pass with the land, are strictly personal covenants, and if there is no right or authority in the party executing them, they are declared to be broken as soon as made, and may be sued on at any time, and a recovery had without alleging an eviction, or an interruption in the title."

Happily the ancient methods have now become obsolete. Not only in England, but in the United States, we have statutes defining just what is included in a warranty of title. Section 1162, Rev. Laws 1910, provides:

"A warranty deed made in substantial compliance with the provisions of this chapter shall convey to the grantee, his heirs or assigns, the whole interest of the grantor in the premises described, and shall be deemed a covenant on the part of the grantor that at the time of making the deed he is legally seised of an indefeasible estate in fee simple of the premises and has good right and full power to convey the same; that the same is clear of all incumbrances and liens, and that he warrants to the grantee, his heirs and assigns, the quiet and peaceable possession thereof, and will defend the title thereto against all persons who may lawfully claim the same; and the covenants and warranty shall be obligatory and binding upon any such grantor, his heirs and personal representatives, as if written at length in such deed."

In Arnold v. Joines, 50 Okla. 4, 150 Pac. 130, the court said:

"Our own Supreme Court, by Justice Sharp, in an able and comprehensive opinion in Faller v. Davis, 30 Okla. 56, 118 Pac. 382, Ann. Cas. 1913B, 1181, and also in Brady v. Bank of Commerce, 4 Okla. 473, 138 Pac. 1020 [Ann. Cas. 1915B, 1019], has taken the broad and sensible view of the law of covenants and cleared away, to a large extent, the mysteries that have for years hung around the uncertainties of the various covenants of warranty, and declared that: 'Covenants of "seisin" and "good right to convey" are synonymous, and, if broken at all, are broken when made, and an actual eviction is unnecessary to consummate the breach,' And that: 'In an action for breach of the covenants of seisin and good right to convey, an eviction need not be alleged; but it is sufficient in charging a breach to negative the words of the covenant generally.'

"Certainly, a most sensible, wholesome, and refreshing doctrine, after groping about among the dusty old 'myths' of uncertain and incomprehensible covenants. Counsel for plaintiff in error was simply following some of the old mysterious and hazy theories, concerning which there is a very great variety of opinions as to the different kinds of covenants, and as to whether they run with the land or are simply personal; but these old troublesome questions are swept away by the statutes and decisions above referred to, and the covenant of general warranty provided for by the laws in this state binds the grantor to warrant and forever defend the title to the grantee, his heirs and assigns, and by this is meant a covenant which accompanies a conveyance of the land and passes from one purchaser to another through each successive link of the chain of title."

In Douglas v. Lewis, 131 U. S. 75, 9 Sup. Ct. 634, 33 L. Ed. 53, it is said:

"The covenant of warranty and that of seisin or of right to convey are not equivalent covenants. Defect of title will sustain an action upon the one, while disturbance of possession is requisite to recover upon the other."

As to general covenants of title, or general warranty of title, the doctrine is well settled that eviction, actual or constructive, is necessary to set in motion the statute of limitations. This doctrine was recognized and applied in the following cases, wherein it was held that the statute of limitations did not commence to run against a right of action for the breach of a general covenant of title or warranty of title until there had been an eviction, either actual or constructive: Hanlin's Estate, 133 Wis. 140, 113 N. W. 411, 17 L. R. A. (N. S.) 1189, 1190, 126 Am. St. Rep. 938; Moore v. Vail, 17 Ill. 185; Watkins v. Gregory, 69 Miss. 469, 13 South. 696; Austis v. Fosdick, 88 Tex. 615, 32 S. W. 872.

It has been held that an adjudication adjudging an outstanding title to be paramount amounts to a constructive eviction, and the statute of limitations will run against a right of action for the breach of the covenant from the time of such adjudication. Finton v. Egelston, 61 Hun, 246, 16 N. Y. Supp. 721. In Kramer v. Carter, 136 Mass. 504, it was held that a covenant of warranty was breached when the judgment was satisfied by the grantee, and from that date on the statute of limitations commenced to run against the right of action for the breach.

The defendant further contends that, inasmuch as the plaintiff failed to give him written notice to defend the title in the action in the United States court, he cannot now maintain an independent action for the breach of warranty. To support this contention, we are cited to section 1166, Rev. Laws 1910. This section must be construed in connection with the sections immediately preceding and following, and, when read together, the meaning of each is made manifest. Section 1165, Id., provides:

"In all cases where there is a recovery of land or any interest therein, adverse to any warranty deed thereto, the judgment by which such recovery is had, shall not be effective or become the basis of an action against previous grantors, other than those who are parties thereto or have been notified in writing of the pendency thereof twenty days before such judgment is entered."

We have seen that the defendant was not only notified orally by the plaintiff to protect the title, but was served with summons in the action in the United States court, and further he appeared by attorney and filed an answer. He was a party to that action, and bound by the judgment therein to the same extent as was the plaintiff. Being a party, it was not necessary to serve him with the written notice required in section 1166, Id., which provides:

"Where an action is brought against a grantee to recover real estate conveyed to him by warranty deed, he must notify the grantor or person bound by the warranty that such suit has been brought, at least twenty days before the day of trial, which notice shall be in writing and shall request such grantor or other person to defend against such action; and in case of failure to give such notice there shall be no further liability upon such warranty, except when it is clearly shown that it was impossible to make service of such notice."

Section 1167, Id., gives the defendant the right to apply and be made a party, so that he may have an opportunity to defend his warranty, or if he fails to appear after due notice, the court shall determine all the rights of the parties, and in case recovery is adverse to the warranty, the warrantee shall recover of the warrantor the price of the land paid for the conveyance at the time of the warranty, and all sums necessarily expended, including reasonable attorney's fee and interest at the rate of 10 per cent. per annum on all sums so paid from the time of payment. The defendant, being a party to the action in the federal court, knowing that his warranty was involved, and failing to avail himself of the privilege at that time to have the rights adjusted between himself and the plaintiff, ought not now to be heard to say that, because the plaintiff failed in that action to have his rights against the defendant adjudicated, he is now estopped from instituting the case at bar. We are not prepared to say that the United States court could have adjusted the differences between this plaintiff and defendant in that action. We have serious doubts whether or not the court was clothed with this jurisdiction; however, when the plaintiff was sued in

that court, it was as much the duty of the defendant to defend his title there as if the action had been brought in the state court. In 8 Am. & Eng. Encyc. of Law, p. 20, it is said:

"Where the covenantor has been notified of the pendency of such suit, or appeared or was a party thereto, the record of such judgment is conclusive evidence of the paramount title of the adverse claimant."

To the same effect, see 11 Cyc. 1157.

This cause of action did not arise prior to statehood. So far as the evidence discloses, plaintiff's right to relief under the warranty was born on the date of the judgment of the United States court, canceling the allotment of Wesley Hoparkentubbi. It follows, therefore, that the laws of Oklahoma apply. The judgment of the United States court, introduced in the trial of this cause in the court below, failed to include the costs of the trial. The court admitted evidence on the part of the plaintiff tending to prove that the costs were paid, and defendant assigned as error the action of the court in admitting evidence on this point. Section 5229, Rev. Laws 1910, provides:

"Where it is not otherwise provided by this and other statutes, costs shall be allowed, of course, to the plaintiff, upon a judgment in his favor, in actions for the recovery of money only, or for the recovery of specific, real or personal property."

It was said in Dillahunty v. L. R. & F. S. R. Co., 59 Ark. 629, 27 S. W. 1002, 28 S. W. 657:

"Where a grantee is in possession at the time of receiving a conveyance, and thereafter voluntarily acquires the paramount title, the damages for breach of covenant of warranty in the conveyance is the amount necessarily paid for the outstanding title, with any other necessary expenses in procuring it."

If the judgment as originally rendered failed to include costs, the plaintiff could easily have filed a motion to tax costs, and the court could have ordered the plaintiff to do just what he did do. Besides, there is no evidence that the costs were not demanded.

The defendant sought to prove the disposition made of the $3,500 received from the plaintiff as the consideration for the deed. The court sustained objection to this evidence, to which the defendant excepted. Under the theories of the respective parties and under the evidence, we cannot see that the court committed error in excluding testimony of this nature. We can-

not see wherein the substantial rights of the defendant were thereby affected, or how the jury would have been assisted in any way by this evidence.

One of the questions submitted to the jury by the instructions of the court was as to the knowledge of the plaintiff regarding the capacity in which the defendant held the title to the lands. We find there were no dealings directly between the plaintiff and the defendant prior to the execution of the deed by the latter. The land was sold to the plaintiff by the real estate agents. The defendant claims that he only held the title as trustee for Mrs. Durkee and Mrs. Elliott, and further that the plaintiff had knowledge of this fact. This the plaintiff positively denied, and asserts that he had no communication whatever with the defendant regarding the sale; that he had J. B. Thompson, an attorney, to pass upon the deed. The deed in all respects was regular upon its face. There is nothing, as disclosed by the deed, to indicate that the defendant was dealing for any person except himself. The burden of the proof was upon the plaintiff to establish his cause against the defendant. The defendant was required to establish his contention by a preponderance of the evidence; that is, that he held the title as trustee, and that knowledge of this was brought home to plaintiff.

From a careful reading of the record, we are forced to say that the plaintiff is strongly corroborated in his contention, and the defendant is wholly uncorroborated, as it is clearly shown that, at the time of the execution of the deed, he had been a practicing lawyer for 25 years. He himself had prepared the deed, and, as a lawyer of long experience, must have fully realized the meaning and consequences of a general warranty. It would appear that the position of the defendant is somewhat inconsistent in now claiming that when he executed the deed he had no other interest in the land than that of a mere trustee, and especially when he voluntarily, and with no request from the plaintiff, or any one representing him, executed and delivered this deed warranting the title thereby conveyed against the whole world. Besides, the admission of this testimony would have been merely cumulative and a repetition of that which the defendant had already given wherein he had testified that ne was only a trustee and did not derive any personal benefit from the consideration.

The defendant requested an instruction, which was refused by the court, to the effect that, if the plaintiff compromised the cause in the United States court, then the verdict should be for the defendant. We have examined the record and fail to find any evidence tending to show that the judgment was the result of a compromise. the defendant to appeal from the judgment. The defendant had the same right to appeal as the plaintiff had, and, when neither appealed, the judgment became final. Elliott v. Saufley, 89 Ky. 52, 11 S. W. 200; 11 Cyc. 1135, 1336. In no event could the defendant complain of the refusal of the court to give this instruction, as the same was completely covered by the fifth instruction given by the court. In 7 R. C. L. 1149, it is said:

"It is not necessary that there should be an actual dispossession of the grantee from the land. It is sufficient if the paramount title is so asserted that he must yield to it, or go out, and, where this is the case, it is held in most of the states that the covenantee may purchase or lease of the true owner, and this will be considered a sufficient eviction to constitute a breach."

In our judgment, the court gave instructions more favorable to the defendant than he was entitled to. The jury was instructed that, if the defendant held the land in trust and the plaintiff knew that fact, and also that if the defendant had no legal title to the land and executed the deed for the purpose of facilitating the purchase of the land for the plaintiff, and that these facts were within the knowledge of the plaintiff, then the verdict should be for the defendant.

Defendant further contends that the court erred in permitting the plaintiff to introduce evidence as to the amount of attorney's fees paid for defending the action in the United States court. We hold this was not error. It seems to be the uniform rule that where a vendor sells lands, and the title fails, and the purchaser, to protect himself, acquires an outstanding title, the purchaser is allowed to recover against his vendor what he reasonably expended in acquiring the outstanding adverse or superior title. He is entitled to interest and expenses necessarily incurred. Lewis v. Boskins, 27 Ark. 61; Stephens v. Black, 77 Pa. 138; Kindley v. Gray, 41 N. C. 445;; Dillahunty v. Little R. & F. S. R. Co., supra.

In Beach v. Nordman, 90 Ark. 59, 117 S. W. 785, it is said:

"The grantee, in an action for breach of a covenant of warranty, can recover costs and necessary expenses, including reasonable attorney's fees, incurred in a bona fide defense

or assertion of his title. though there was no express agreement by the grantor. in addition to his covenant, to pay such expenses."

To the same effect, see Brawley v. Copelin, supra.

The court committed no error in refusing instructions tendered by defendant, as those to which he was entitled were covered by the instructions the court gave. We find no error in the judgment of the trial court and conclude the same should be affirmed; and it is so ordered.

OWEN, C. J., and SHARP, HARRISON, McNEILL, and HIGGINS. JJ., concur.