**MILLER v. NATIONAL SURETY CO.**

No. 21113.　Opinion Filed Sept. 13, 1932.

Gray & Palmer, for plaintiff in error.

A. P. Carr, for defendant in error.

CULLISON, J. Plaintiff, National Surety Company, instituted suit against defendant, Miller, seeking to recover for money alleged to have been paid by plaintiff because of its liability upon certain bonds. Defendant answered and denied that plaintiff ever executed any bonds for him; and second, that if there was any liability, the same was barred by the statute of limitations. From a judgment favorable to plaintiff, defendant appeals. The parties will be referred to as they appear in the trial court.

The record discloses that C. L. McPhail was the owner of certain oil mining leases in Osage county, Okla., and that McPhail sold two of said leases to defendant, Miller.

Under the regulations of the Department of the Interior, it was necessary that the holder of a lease with the Department give a bond to the Department. When Miller procured the leases from McPhail, he made written application to plaintiff requesting that plaintiff furnish defendant bonds running to the Osage Tribe of Indians in the amount of $1,000, in which said written application there were numerous provisions relative to the duties and obligations of both parties to said agreement.

The record further discloses that plaintiff had issued bonds covering McPhail under said leases. The record further shows that an agreement was made by plaintiff with the Secretary of the Interior to continue in force and effect the bonds theretofore executed covering said leases given by McPhail, but that new bonds in the name of Miller were not executed.

The record further shows that Miller failed to make certain payments, and upon his failure to make such payments, plaintiff made said payments to the United States under the terms of the bond originally issued for McPhail and continued in force for the benefit of Miller in favor of the government. Miller defaulted in the payment of the rental due on the leases, and plaintiff paid $360 on September 30, 1925, to relieve itself of liability under said bonds.

In the suit at bar, plaintiff seeks judgment against Miller for the $360 paid, with interest at 6 per cent. Defendant's first contention in his brief is that:

"The plaintiff in error never at any time became liable to the defendant in error, plaintiff below, and never became obligated to the defendant in error, and that the evidence and the pleadings show that the plaintiff in error never became obligated to the defendant in error for the reason that the surety company never executed the bond for him."

In consideration of said proposition as submitted by defendant, we observe that the signed application made by defendant to plaintiff contains the following statement:

"We agree to pay $10 premium for this bond in advance and the same amount annually thereafter in advance so long as the bond shall continue in force or so long as any other bond of the same amount, tenor and effect (executed for us by the company), shall continue in force."

We observe that this is an agreement to pay a certain premium for a bond so long as the bond shall continue in force and effect, or so long as any other bond of the same amount, tenor and effect shall continue in force.

The case was tried by the court upon a stipulation of facts, which said stipulation contains the following statement:

"That said National Surety Company consented and agreed with the Secretary of the Interior to continue in force the bonds theretofore covering said leases given by said C. L. McPhail, but did not execute any bond directly for Miller in pursuance of said applications."

Also, in defendant's application to plaintiff for said bonds, we find the following pertinent statements:

"That no act or omission of the company in modifying, amending, limiting or extending any instrument executed by the company shall in any wise affect our liability hereunder, nor shall we or any of us be released from this obligation by reason thereof, and we agree that the company may alter, change, modify, amend, limit, or extend any instrument and may execute renewals thereof or other and new obligations in its place or in lieu thereof and without notice to us, notice being expressly waived, and, in any such case, we and each of us shall be liable to the company as fully and to the same extent on account of any such altered, changed, modified, amended, limited, or extended instrument were (sic) described at length herein." (Paragraph 5 of the Bond.)

That the undersigned will at all times

indemnify and keep indemnified the company and hold and ·save it harmless from and against any and all damages, loss, costs, charges, and expenses of whatsoever kind or nature, including counsel and attorney fees, which the company shall, or may at any time, sustain, or incur by reason, or in consequence of, having executed the bond herein applied for or of any and all other bonds or renewals at any time heretofore or hereafter executed for us or at our instance or request and that we will pay over, reimburse, and make good to the company, its successors or assigns, all sums and amounts of money which the company or its representatives shall pay, or cause to be paid, or become liable to pay, on account of the execution of any instrument. * * *"

The agreed stipulation of fact further shows that plaintiff paid to the United States for the benefit of the Osage Tribe of Indians under its liability on said bonds the sum of $360 on October 13, 1925.

We observe that it was necessary that defendant furnish bond guaranteeing the payment of the rentals on the leases held. In order to fulfill said requirements he made a written application to plaintiff requesting said bonds.

Under the terms and conditions of the application, defendant agreed to pay the premium on this bond, or so long as any other bond of the same amount, tenor, and effect should continue in force. Also, that the company may extend any instrument that it desires. The company extended said bonds and when Miller failed to pay the rental due, plaintiff paid said rental due from Miller on his leases.

Defendant's defense is technical. He claims that since plaintiff did not execute new bonds for him, but continued the old bonds in the name of McPhail, that there was no liability on defendant to reimburse plaintiff for the money it paid because he defaulted in the payment of the lease rentals.

Under the terms of the application, defendant agreed to indemnify and hold harmless plaintiff from all loss, and further agreed with plaintiff that it may extend any instrument, and that defendant shall be liable to the company the same as though the extended instrument is set out herein in full. The defendant received the benefits of said bonds, and having received said benefits he cannot now deny the liability thereunder.

Defendant's second assignment of error is that the statute of limitations had run against plaintiff's cause of action.

In our consideration of said assignment of error, it will be necessary that we determine the date the statute of limitations began to run in the case at bar.

In the case of Patterson v. Bonner, 73 Okla. 224, 175 P. 826, this court announced the following concise rule:

"Whenever one party to a contract may rightfully sue another thereon, a cause of action has accrued, and the statute of limitations begins to run."

Defendant contends that the statute of limitations began to run when the rentals became due on the said lease. We observe that when the rentals became due, the relation of debtor and creditor existed between the lessor and lessee of the land. The statute of limitations would begin to run as to the amount of rentals due the date the same became due and delinquent. But the question in the case at bar is not a question of liability between the lessor and lessee, but between the bonding company and Miller, the lessee, because the bonding company paid the amount of rentals on October 13, 1925, in order to satisfy its liability under the terms and conditions of its bond.

The liability between plaintiff and defendant was not created until plaintiff made certain payments, under the terms and conditions of the bond, for the benefit of Miller, defendant herein. Under the rule just announced, supra, whenever one party to a contract can maintain a cause of action against the other party to the contract, then the statute of limitations begins to run.

Under the facts in the case at bar, plaintiff made certain payments of money for defendant under the terms of, its liability on said bonds on October 13, 1925. Immediately thereafter plaintiff had a right to recover from defendant such amounts of money as plaintiff had paid for defendant. Therefore, October 13, 1925, would be the date upon which the statute of limitations began to run against the plaintiff's cause of action. Plaintiff filed the case at bar on September 11, 1929.

The basis of plaintiff's suit is certain instruments in writing. The statute of limitations upon such cause of action under paragraph 1, section 185, C. O. S. 1921, [O. S. 1931, sec. 101] is five years.

Plaintiff's cause of action was filed within the statutory time, and the same was not barred by the statute of limitations.

We therefore hold that the judgment of the trial court should be in all things sustained.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur.

Note.—See under (2) 17 R. C. L. 748, 751; R. C. L. Perm. Supp. p. 4344; R. C. L. Pocket Part, title "Limitation of Actions," §§ 116, 118.