## THOMAS v. WILLIAMS et al.

No. 22829. Sept. 25, 1935.

J. C. Stevenson, J. E. Falkenberg, and W. H. C. Taylor, for plaintiff in error.

Ridings & Drennan, for defendants in error.

PER CURIAM. The parties will be referred to herein as they appeared in the court below.

This action was originally filed May 20, 1927, by the plaintiff, Fred Thomas, against E. Cordray and Charles Cordray, part-

ners doing business under the firm name of E. Cordray & Son, C. D. Williams doing business under the name of the Williams Oil Company, and the Williams Oil Company, a corporation, but was on the 4th day of January, 1928, dismissed by the court for want of prosecution, and on the 18th day of June, 1928, upon motion of plaintiff, was reinstated as to the defendants, C. D. Williams doing business under the trade name of the Williams Oil Company, and the Williams Oil Company, a corporation, only, the court having overruled the motion to reinstate as to the other defendants. After various preliminary motions and demurrers were filed and amendments made, the plaintiff finally filed his final amended petition on the 12th day of December, 1930.

The pertinent facts alleged in said amended petition and set forth in the opening statement at the time of the trial, and upon which the court rendered judgment against the plaintiff, are as follows:

That on the 14th day of October, 1922, there were two actions pending in each of which judgment had been rendered in favor of the plaintiff therein for some amount not disclosed. One of said actions and judgments was pending in the justice court of S. Galladay, Manchester Village, in which E. Cordray & Son was plaintiff and one T. J. Thrush defendant, and the other was pending in the justice court of one L. P. Scott, Wakita, in which the Williams Oil Company was plaintiff and T. J. Thrush was defendant. Apparently, about the same time a separate execution was issued in each of said actions and one constable levied under both of said executions upon one certain "threshing machine outfit" in an effort to satisfy both of said judgments. "That this plaintiff desired to bid at said sale, but refused to do so until said defendants herein, for the purpose of inducing the plaintiff herein and others to bid at said sale, orally guaranteed the title of said property so offered for sale and agreed to hold the plaintiff herein harmless against any claims that might be made against him for the value of, or for the possession of said property, or for the conversion thereof in case he should become the purchaser at said sale." That in reliance upon said agreement the plaintiff purchased said property at said sale for the sum of $300, which sum he paid to the constable and took possession of and commenced using said property.

That thereafter in the district court of Alfalfa county one Sam Henry and T. J. Thrush, partners doing business under the firm name of Thrush & Henry, instituted an action against this plaintiff for conversion of said property; that immediately upon institution of said action this plaintiff notified C. D. Williams and the Williams Oil Company of the pendency of said action against him and demanded that they defend the same, but that said defendants refused and failed to defend or appear in said action, and that this plaintiff was compelled to and did employ an attorney to defend said action and did defend said action as diligently and effectively as possible under the law and the facts of the case. But that on the 19th day of May, 1925, the plaintiffs in said action recovered judgment against this plaintiff, in the sum of $348, together with costs; and that this plaintiff on the 19th day of September, 1925, was compelled to pay said judgment, costs and interest in the total sum of $450; that in addition thereto this plaintiff was compelled to and did pay his counsel for defending said suit $100 and was compelled to and did pay the sum of $50 for necessary traveling and other expenses and additional costs in the trial of said cause. Plaintiff prayed judgment in the total sum of $820, with interest, which total sum apparently is incorrect but is immaterial for the disposition of this appeal.

The plaintiff pleads around the statute of limitations by alleging in substance that subsequent to the guarantee of the title and rendition of said judgment against plaintiff and payment thereof by him, said defendants, about April, 1926, removed from the state of Oklahoma and moved to the state of Kansas, and have remained ever since and are now residents of the state of Kansas and were absent from the state of Oklahoma, and service of summons could not be had upon them in the state of Oklahoma since said date.

To the amended petition the defendant, or defendants, filed an answer, the pertinent parts of which are:

"Fred Thomas, plaintiff v. C. D. Williams, and the Williams Oil Company, defendants.

"Comes now the defendant, the Williams Oil Company, and for its answer to the amended petition of the plaintiff states: (Then follows a general denial and allegations on behalf of the Williams Oil Company only in answer to the plaintiff's allegations with respect to the statute of limitations.)

"Wherefore, defendant prays that the

plaintiff take nothing by his amended petition and that the defendant recover his costs herein expended.

"John C. Drennan
"Attorney for defendants."

On the 22nd day of April, 1931, upon the pleadings and issues thus formed, the cause was tried with the aid of a jury. After opening statements were made by each of the parties, upon the plaintiff commencing the introduction of testimony, the defendants objected thereto upon the ground that the plaintif's amended petition did not state a cause of action, and moved the court to dismiss the plaintiff's action and render judgment in favor of the defendants thereon. The plaintiff, on the other hand, at the same time moved the court for default judgment against the defendant C. D. Williams, on the ground that no answer had been filed on behalf of said defendant. The court sustained the defendants' objection to the introduction of any testimony, dismissed the plaintiff's cause of action and rendered judgment in favor of the defendants and refused to render default judgment as against the defendant C. D. Williams.

The primary questions presented under the errors assigned are:

(1) Did the plaintiff state a cause of action in his amended petition?

(2) If the plaintiff stated a cause of action, was he entitled to a default judgment against the defendant C. D. Williams?

We will first consider whether the plaintiff stated a cause of action.

There is some question raised by the briefs of counsel, but apparently not very seriously, with respect to the statute of limitations. If the plaintiff's cause of action accrued as of the date of the contract October 14, 1922, then the action was barred by the three-year limitation on oral contracts before May 20, 1927, when the suit was filed, and was also barred before April, 1926, when plaintiff alleges defendants moved and have remained out of the state. But if, on the other hand, the plaintiff's cause of action accrued at the time judgment was rendered against him for conversion May 19, 1925, or when he paid said judgment September 19, 1925, then and in either of such events the plaintiff has effectively pleaded around the statute of limitations. Since the action against the plaintiff by Henry & Thrush was for conversion, apparently the plaintiff was never disturbed in his possession of said property and was not actually damaged until said judgment was rendered and he paid the same.

The contract alleged by the plaintiff is not a contract to pay a liability, but a contract of indemnity. The rule in such instances is as this court said in Boling v. Ashbridge, 111 Okla. 66, 238 P. 421:

"Contracts to pay legal liabilities differ from contracts of indemnity, in this; that upon the latter action cannot be maintained and recovery had until the liability is discharged, while upon the former the right of action is complete when the liability attaches."

See, also, Curtis & Gartside v. Aetna Life Insurance Co., 58 Okla. 470, 160 P. 465; Johnson v. Davis, 146 Okla. 170, 293 P. 197; Miller v. National Surety Co., 159 Okla. 76, 14 P. (2d) 228; Rennie v. Gibson, 75 Okla. 282, 183 P. 483.

We therefore hold that the plaintiff's cause of action did not accrue until on or about the 19th day of May, 1925, when the liability was discharged, and that the statute of limitations did not commence to run until that date.

The principal theory which is urged to sustain the judgment is that the plaintiff's cause of action is one based upon an oral contract of guaranty to answer for the debt, default or miscarriage of another, and is void because the same was not in writing. The pertinent statutes applicable are:

Compiled Oklahoma Statutes, 1921.

Sec. 5034. "Statute of Frauds. The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or by his agent. * * *

"Second. A special promise to answer for the debt, default or miscarriage of another, except in the cases provided for in the article on guaranty."

Sec. 5123. "Guaranty Defined. A guaranty is a promise to answer for the debt, default, or miscarriage of another person."

Sec. 5126. "A guaranty Must be in Writing Except as prescribed by the next section, a guaranty must be in writing and signed by the guarantor."

The exceptions noted in the next section are immaterial in this case, because the facts do not fall within any of them.

If the contract alleged by the plaintiff in this case is a contract or a guaranty "to answer for the debt, default or miscarriage of another person," then the plaintiff clearly does not state a cause of action, but the question is: Does plaintiff allege a contract of guaranty "to answer for the debt, default

or miscarriage of another," or does he allege an original obligation in the nature of a contract of indemnity?

The statute defining a contract of guaranty has already been quoted. The statute defining "indemnity" is C. O. S. 1921:

Sec. 5171. "Indemnity Defined. Indemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of·some other person."

This court has defined the difference between the two in Oppenheim v. National Surety Co., 105 Okla. 223, 231 P. 1076, in the following language:

"A contract of 'guaranty' is a collateral undertaking, and presupposes an original contract; while a contract of 'indemnity' is original and independent. In a contract of 'indemnity', the undertaking is to make good and save harmless the person, with whom the contract is made, upon an obligation of such person to a third person; while, in a contract of 'guaranty', the obligation is to answer for the debt, default, or miscarriage of another to the person with whom the contract is made."

Under the allegations of the plaintiff in this case, there was no third party liable, for whose debt, default, or miscarriage the defendant could have become collaterally liable. The law, however, is that even if some third party would have been primarily liable on a warranty of title under the circumstances, the defendant's obligation, since he was directly interested in the sale as judgment creditor, would have been an original rather than a collateral obligation.

This court said in Walter A. Wood Mowing & Reaping Co. v. Farnham, 1 Okla. 375, 33 P. 867, quoting from Nading v. McGregor (Ind.) 6 L. R. A. 686:

" 'It is often a question of very great difficulty to determine whether a particular instrument of writing constitutes a strict guaranty, or whether it constitutes an original undertaking. In a strict guaranty, the guarantor does not undertake to do the thing which his principal is bound to do, but his obligation is that the principal shall perform such act as he is bound to perform, or, in the event he fails, that the guarantor will pay such damages as may result from such failure. It is this feature which enables us to distinguish a strict or collateral guaranty from a direct undertaking or promise so that when an instrument of writing resolves itself into a promise or undertaking on the part of the person executing it to do a particular thing, which another is bound to do, in the event such other person does not perform the act himself, it is said to be an original undertaking, and not a strict or collateral

guaranty. In the latter case of contracts the undertaking is in the nature of a surety. * * *' "

Or again, as this court said in Lindley v. Kelly, 47 Okla. 328, 147 P. 1015:

" 'Whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability.' (Emerson v. Slater, 22 How. 28, 16 L.-Ed. 360.)

"In Browne on Statute of Frauds, sec. 165, it is said:

" 'The statute contemplates the mere promise of one man to be responsible for another, and cannot be interposed as a cover and shield against the actual obligations of the defendant himself.'

"Davis v. Patrick, 141 U. S. 479, 12 Sup. Ct. 58, 35 L. Ed. 826, is a case in which the facts are very similar to the one at bar. Mr. Justice Brewer, speaking for the court, said:

" 'The thought is that there is a marked difference between a promise which without any interest in the subject-matter of the promise, in the promisor, is purely collateral to the obligation of a third party, and that which, though operating upon the debt of a third party, is also and mainly for the benefit of the promisor. The case before us is in the latter category. While the original promisor was the mining company, and the undertaking was for its benefit, yet the performance of the contract inured equally to the benefit of Davis and the mining company. Performance helped the mining company in the payment of its debt to Davis, and at the same time helped Davis to secure the payment of the mining company's debt to him; and as the mining company was apparently destitute of any other property, and the payment of its debt to Davis therefore depended upon the continued and successful working of this mine, and as the control and working of the mine had been put in the hands of Davis so that he might justly say, as he did. "I am practically the owner," it follows that he was a real, substantial party in interest in the performance of this contract. His promise was not one purely collateral to sustain the obligations of the mining company, but substantially a direct and personal one to advance his own interests. * * * He, therefore, in any true sense of the term occupied, not the position of a collateral undertaker, but that of an original promisor, and it would be a shadow on justice if the administration of the law relieved

him from the burden of his promise on the ground that it also resulted to the benefit of the mining company, his debtor.'"

This rule was again approved by this court in Bennington Lumber Co. v. Attaway, 58 Okla. 229, 158 P. 566, where the court said:

"The following general principle is approved by Mr. Browne in his work on the Statute of Frauds as being fairly deducible from the adjudicated cases: If the consideration of the new promise spring out of any new transaction, or move to the party promising upon some fresh and substantive ground of a personal concern to himself, the statute of frauds does not attach. Browne on the Statute of Frauds, sec. 212. After discussing at some length the same question, the learned author in the same section continues:

"'The words of the statute itself in their simple meaning seem to give us the true rule. It contemplates a promise to answer for another's debt, a promise for that purpose, a mere guaranty; and it never was meant that a man should set it up as a pretext to escape from the performance of a valid verbal obligation of his own, because, in performing it, the discharge, of a third party's debt was incidentally involved.'"

To the same effect see Tulsa Ice Co. v. Liley, 157 Okla. 86, 10 P. (2d) 1090.

Under these authorities, therefore, the undertaking on the part of the defendants is not collateral, but direct and original regardless of the interest or promise of others.

In the instant case, however, there was no primary liability of any third person for which the defendants could have answered. We do not, therefore, have a contract of guaranty, but we have a contract of indemnity, or in the nature of indemnity warranting the title and agreeing to hold the plaintiff harmless founded upon a good and sufficient consideration and valid even though oral.

The principle involved in this case, we believe, has been definitely determined by this court in a comparatively recent case involving a similar state of facts except that the sale therein involved was not a judicial sale, which difference we consider immaterial.

We refer to the case of Fischer v. Baschwitz, 152 Okla. 231, 5 P. (2d) 356. There the

"Plaintiff alleged, in substance, that he purchased stock in an oil company in 1918 from the defendant who was a director and stockholder therein, under the agreement and promise that if plaintiff would purchase the stock, defendant would indemnify the said plaintiff and hold him harmless from any loss that he might sustain through the purchase of said stock together with interest on his investment. Relying on said promise and agreement he purchased the stock; that later the company was taken over by another company and under the plan of reorganization an allotment of stock in the new company was made to plaintiff, which was offered to plaintiff for cash; plaintiff refused to accept the allotment; that defendant, in order to induce plaintiff to accept the same and pay cash therefor, orally and in writing agreed to hold plaintiff harmless from any loss by reason of the purchase theretofore made, and also for any losses that might result from further purchase of stock in the new company. Relying upon said agreement and promise, plaintiff accepted the allotment and paid cash therefor. * * *"

Loss ensued and the purchaser sued and this court disposed of the case on the theory that the contracts referred to were entirely oral. In the body of the opinion, after citing and quoting fully the statutes herein above already cited and quoted on guaranty and indemnity, and citing a number of other cases in support of it, this court said:

"The case at bar seems to us to involve but a single plain, fundamental principle, not calling for extended discussion, in this, a contract of guaranty is a collateral undertaking. It cannot exist without the presence of a main or substantive liability on the part of a third person, either express or implied.

"If there is no primary liability of a third person to the promisee which continues after the promise is made, it is an original promise, and need not be in writing.

"The corporation from which plaintiff purchased the stock owed him no duty in the premises after such purchase was consummated, except the general obligation to him, in common with all other shareholders, to fairly and impartially conduct the business. It was the defendant who entered into contract with plaintiff."

Likewise, in this case, there was no primary liability of a third person to the plaintiff which continued after the promise was made by the defendant, therefore, the defendants' promise was original and not collateral; it was in the nature of an indemnity and not a guaranty contract and was not required to be in writing.

We, therefore, hold that the plaintiff did state a cause of action in his amended petition:

We next come to the question, since the plaintiff did state a cause of action in his petition, Was he entitled to default judgment against the defendant C. D. Williams?

We think not—First, because defendants and the court treated the answer on file as having been filed on behalf of both defendants, and, second, because before the plaintiff could recover it was necessary for him to offer proof of damages and no such proof was offered. Section 672, C. O. S. 1921; Atchison, T. & S. F. Ry. Co. v. Lambert, 31 Okla. 300, 121 P. 654; Cudd v. Farmers Exchange Bank, 76 Okla. 317, 185 P. 521.

We, therefore, hold that the court did not commit error in refusing to render default judgment against the defendant C. D. Williams, but did commit error in sustaining the defendant's objection to the introduction of evidence and dismissing the plaintiff's action.

The judgment of the trial court is reversed and the cause remanded, with directions to the trial court to proceed in accordance herewith.

The Supreme Court acknowledges the aid of Attorneys John Ladner, Summers Hardy, and J. A. Duff in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Ladner and approved by Mr. Hardy and Mr. Duff, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.