MUIR, Ex'x, v. SHICK.

No. 29400. Sept. 24, 1940.

Rehearing Denied Dec. 24, 1940.

Application for Leave to File Second Petition for Rehearing Denied Jan. 7, 1941.

*108 P. 2d 544.*

T. R. Blaine, of Kingfisher, for plaintiff in error.

C. Everett Murphy, of Kingfisher, for defendant in error.

OSBORN, J. This action was instituted in the district court of Kingfisher county by Carl W. Shick, hereinafter referred to as plaintiff, against Rose Muir, executrix of the last will and testament of H. W. Shick, deceased, wherein plaintiff sought to recover the value of services performed for the said H. W. Shick, deceased, during his lifetime. Issues were joined, the cause was tried to a jury and a verdict was rendered in favor of plaintiff in the sum of $1,100. From a judgment thereon, defendant has appealed.

Among other assignments of error, it is urged that the plaintiff's cause of action was barred by the provisions of subsection 2, section 101, O. S. 1931, 12 Okla. St. Ann. § 95, subd. 2, fixing a period of limitation of three years for actions upon contracts not in writing.

Plaintiff was the son and defendant the daughter of deceased. The plaintiff alleged in his petition, which was filed October 9, 1937, that on or about February 28, 1932, plaintiff and his wife, Pearl M. Shick, entered into an agreement with deceased, H. W. Shick, whereby they were to live with deceased, keep house for him, and assist in farming operations, in return for which services to be performed deceased agreed to devise by will all of his real and personal property to plaintiff; that in pursuance of said agreement plaintiff and his wife left their home at Oakley, Kan., and moved to the home of deceased at Hennessey, Okla.; that plaintiff and his wife lived with deceased until February 20, 1933, and complied with the terms of the agreement by working, keeping house, and doing whatever else was necessary to be done for the said deceased; that on or about February 20, 1933, deceased remarried, thus forcing plaintiff and his wife to leave the home of deceased. The date of the death of deceased was May 9, 1937. It was alleged that he breached the contract and agreement made with plaintiff by executing a will leaving his property to persons other than plaintiff. It was further alleged that plaintiff filed a claim with the executrix, which was disallowed.

Defendant denied that any such agreement was ever entered into, and pleaded the statute of limitations and the statute of frauds.

The evidence discloses that at the time the contractual arrangement herein referred to was entered into, deceased was a widower, his second wife having recently died. It appears that several months after the arrangement had been entered into plaintiff learned that deceased contemplated remarriage. At that time an arrangement was made whereby deceased furnished plaintiff the sum of $1,050 for the construction of a building in Oakley, Kan., which was thereafter used by plaintiff in the operation of his garage business. With reference to the breach of the contractual arrangement, plaintiff was examined by the court and testified as follows:

"The Court: Now, Mr. Shick, you found out in September, 1932, that your father contemplated marrying this Mrs. Caldwell, didn't you? The Witness: Yes, sir. The Court: And when you found that out, you concluded, then, to go back to Kansas? The Witness: Yes, sir. The

Court: And when that was made known to your father, this shop was built in Kansas for your use and benefit? The Witness: Yes. The Court: Now, I understand you to say that the cost of that was a gift from your father—the $1,000 that went into it? The Witness: Yes, sir. The Court: And you moved up there, then, and ran that shop? The Witness: Yes, sir. The Court: And that was in pursuance to your understanding that you had with your father? The Witness: Yes, sir. The Court: And your plan, then, by which you were to live on the farm and take care of your father until he died, and under which he was to will the property to you—that, in a way, was 'blown up' by this marriage? The Witness: Yes, sir. The Court: Yes. And you recognized that fact, and your father recognized it? The Witness: Yes. The Court: So this other arrangement was made, by which you would go to Kansas and he would build you a shop and you would move there? That is right, isn't it? The Witness: That is right. The Court: All right. Mr. Murphy: Now, — The Court: And you agreed to that plan, and your father agreed to it? The Witness: Yes, sir."

Plaintiff further testified that the advancement of $1,050 to him from his father had nothing to do with the final settlement, but was a gift. On the other hand, the will of the deceased recites that the said sum was a loan which was to be repaid by the plaintiff to the estate.

It is urged by the plaintiff that the case of Poole v. Janovy, 131 Okla. 219, 268 P. 291, is controlling on the question of limitations. Therein it was held that the statute of limitations against actions on claims growing out of agreements to make provision by will for the promisee to compensate for services rendered commences to run at the time of the promisor's death and not before, for the reason that no right of action accrues to the promisee until the death of the promisor and his failure to comply with the agreement. Defendant relies upon the case of Smith v. Long, 183 Okla. 441, 83 P. 2d 167, which was an action by Sarah E. Long against Amanda Smith for services rendered under an oral contract wherein it was agreed to provide

for payment by will for services to be rendered. In that case defendant breached the agreement and told plaintiff that she would not comply therewith, whereupon plaintiff, during the lifetime of Amanda Smith, instituted the action. It was therein held that upon breach of an agreement to make a will, the cause of action accrued and plaintiff was not required to wait until the death of defendant to institute an action to recover the value of the services rendered. It was therein pointed out that the action was not brought for breach of promise to provide for the plaintiff in a will, or for enforcement of such a promise; therefore, the case of Poole v. Janovy, supra, had no application. Therein it was said:

"The 'common counts' in our jurisdiction would be the contract to pay for the services either expressed or implied. We hold that the plaintiff here had the right, upon being informed that the defendant did not consider herself bound by the agreement, to sue from and after the date that she was informed that the defendant had repudiated the agreement and refused to make any settlement. * * *"

It is well established in this jurisdiction that whenever one party to a contract may rightly sue another thereon, a cause of action has accrued and the statute of limitations begins to run. Patterson v. Bonner, 73 Okla. 224, 175 P. 826; Miller v. National Surety Co., 159 Okla. 76, 14 P. 2d 228.

Plaintiff contends that the breach of contract did not occur until May 9, 1937, the date of the death of the deceased, for until that time deceased could have complied with the agreement by making a will according to the terms of the agreement. This argument does not harmonize with plaintiff's testimony hereinabove quoted in which he stated that the plan was "blown up" by the father's marriage, which fact was recognized by both parties, and that another arrangement was made and agreed to by both parties. There can be no doubt that the contract was breached in September, 1932, and if plaintiff had a cause of ac-

tion for services rendered under the breached contract, it then and there accrued and the statute of limitations began to run against it. Other authorities in harmony with the views herein expressed and involving similar fact situations are as follows: Englebrecht v. Herrington, 101 Kan. 720, 172 P. 715, 21 L. R. A. 1918E, 785; Paul v. Snyder (Ind. App.) 100 N. E. 571; 106 A. L. R. 764; 94 A. L. R. 457; 69 A. L. R. 166; 36 L. R. A. (N. S.) 922; 6 L. R. A. (N. S.) 703.

In the light of these authorities, we are of the view that plaintiff's cause was barred by the statute of limitations. It therefore becomes unnecessary to consider the various other assignments of error presented and argued in the briefs.

The judgment of the trial court is reversed and the cause remanded, with directions to dismiss the same.

BAYLESS, C. J., WELCH, V. C. J., and GIBSON and DAVISON, JJ., concur.