**AALCO CONSTRUCTION COMPANY, a corporation, and Robert W. Sewell, Appellants,**

v.

**F. H. LINNEMAN CONSTRUCTION CO., Inc., Appellee.**

No. 9505.

United States Court of Appeals
Tenth Circuit.

Sept. 4, 1968.

Charles A. Whitebook, Tulsa (John K. Harlin, Jr., and Whitebook & Raskin, Tulsa, of counsel, on the briefs), for appellants.

A. F. Ringold, Tulsa (Rosenstein, Livingston, Fist & Ringold, Tulsa, of counsel, on the brief), for appellee.

Before MURRAH, Chief Judge, and PHILLIPS and HILL, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

F. H. Linneman Construction Co.,[1] a Colorado corporation, brought this action against Aalco Construction Company, Inc.,[2] an Oklahoma corporation, to recover damages for breach of an alleged subcontract to furnish all the labor and materials and to construct Project No. 1 of the Washington County Sewer Improvement District No. 2, in Bartlesville, Oklahoma, and a contract collateral thereto, and against Robert W. Sewell for breach of an alleged oral contract of indemnity. The case was tried to the court without a jury.

Aalco and Sewell have appealed from a judgment in favor of FHL Co.

Fred H. Linneman is president, and Jack Rose is vice-president of FHL Co. Sewell is president and principal stockholder of Aalco.

In midsummer of 1963, the District was about to call for bids for the construction of its Project No. 1. Aalco was desirous of bidding for the job, but its financial condition was such that it could not obtain a performance bond or a statutory payment (lien) bond, or satisfy the District that it was financially competent as a bidder.

In July 1963, Sewell contacted Linneman by telephone, told him about the Sewer District Project, and asked Linneman if he or the FHL Co. would be interested in joining with Aalco in bidding for the job, or in underwriting Aalco as a bidder. Linneman replied that he would not be interested in a joint venture, but would try to work out an arrangement to assist Aalco.

The trial court found the facts substantially as above stated,[3] and further found these facts:

The FHL Co., through its president, Linneman, and its vice-president, Rose, had several conversations with Sewell, some by telephone and others in person, and as a result an oral agreement was reached, by which it was agreed that the FHL Co. would submit a bid for the job, and if awarded the contract would enter into a prime contract with the District to construct the project and furnish the performance and payment bonds; and that the FHL Co. and Aalco would enter into a subcontract, by which the latter would agree as subcontractor to furnish all the labor and materials and perform all the work and construct the

1. Hereinafter called FHL Co.

2. Hereinafter called Aalco.

3. Certain of the facts above stated were not expressly found by the trial court, but in every such instance the facts stated are fully supported by substantial and creditable evidence.

project in accordance with the terms of the prime contract, and the FHL Co. would agree that Aalco should receive the full contract price; and that for the risk assumed by the FHL Co., Aalco would agree to pay it five per cent of the gross amount of the bid when the project was completed.

The bid was based on estimates prepared by Aalco and Sewell and furnished by them to the FHL Co. The bid form was checked and approved by Rose.

The FHL Co. submitted a bid of $533,-642.87, which was accepted, and on August 9, 1963, it entered into a prime contract to furnish all the labor and materials and construct the project. On the same day, FHL Co. and Aalco entered into a subcontract, by the terms of which Aalco was to receive the full contract price, and was to furnish all the labor and materials and construct the project and fully perform the entire prime contract.

Also on the same day, Aalco wrote a letter to the FHL Co., by which it agreed to pay the latter for the risk it assumed, five per cent of the gross amount of the contract price on completion of the project.

Early in the negotiations, Linneman insisted that the FHL Co. must have a personal indemnity agreement from Sewell against a loss by the FHL Co. Sewell, individually, orally promised the FHL Co. that he would hold it harmless against any loss. The FHL Co. relied on that promise, and would not have entered into the prime contract, or the balance of the arrangement, without such promise by Sewell.[4]

Aalco commenced performance under the subcontract. The FHL Co. advanced funds to Aalco. Not long after Aalco commenced performance of the subcontract, the FHL Co. began to receive complaints from the District and its engineers of unsatisfactory performance of the work by Aalco. That continued, because Aalco did not perform the work in accordance with the requirements of the prime contract, which requirements were made a part of the subcontract. As a result, the FHL Co. was required to take the job over and complete the contract, in order to avoid breaches of the prime contract and the incurring of penalties and damages, as provided for therein. On February 17, 1964, the FHL Co., with the acquiescence of Aalco, took over the work and finished the job.

The trial court further found that due to the breach of the subcontract by Aalco, the FHL Co. suffered damages in the following amounts:

(a) $58,736.72, which was a portion of $285,307.64 advanced by the FHL Co. to Aalco, under the provisions of the subcontract, which Aalco "retained for purposes not authorized" by the subcontract;

(b) $38,555.74, being the net deficit between funds received and expended by the FHL Co. in connection with the project;

(c) $9,041.85, being the amount of additional unpaid claims in connection with the project;

(d) $50,617.40, representing the charge for the use of necessary equip-

---

4. The finding respecting the oral indemnity contract of Sewell is supported, not only by the testimony of Linneman, but by the positive testimony of Rose, respecting a conversation to that effect, had between him and Sewell in July 1963. Rose testified that he was instructed by Linneman to get a personal assurance from Sewell that the job would result in a profit, so the FHL Co. would suffer no loss, and that Sewell verbally agreed that he would personally guarantee that the job would result in a profit. The oral testimony is corroborated by a phrase in a writing, dated July 23, 1963, addressed to the FHL Co. and signed by Aalco, by Robert W. Sewell as its president. This writing in part reads: "It further agrees to give * * * my personal indemnity to you for the length of the job as per our discussion with Jack Rose, your representative."

ment furnished by FHL Co. in completing the work on the project;

(e) $44,633.13, representing the necessary additional overhead expense incurred by FHL Co. in completing the project;

(f) $26,663.47, being the amount due the FHL Co. under the five per cent contract with Aalco.

The court further found that the FHL Co. was entitled to recover from Aalco, under its subcontract with Aalco, $228,-275.31, and was entitled to recover against Sewell, individually, upon his oral contract of indemnity, the sum of $201,611.84, that being the amount of the judgment against the defendant, Aalco, less the sum of $26,663.47, due under the five per cent contract.

■ The findings of the trial. court are all amply supported by substantial and creditable evidence and none of them are clearly erroneous. We think no useful purpose would be served by setting out all of the evidence in detail that thus supports the findings of the trial court.

Since such findings are not clearly erroneous, under Rule 52 of the Federal Rules of Civil Procedure they are binding on this court.

The court concluded that the prime contract between FHL Co. and the District was a valid legal contract, which required the FHL Co. to construct the project in accordance with the terms and provisions thereof; that the oral agreement between the FHL Co. and Aalco was reduced to a subcontract agreement and supplemental letter agreement, which bound Aalco to construct the project in accordance with the plans, specifications, and requirements of the prime contract, and to pay the FHL Co. five per cent of the total contract price; and that Sewell orally agreed to indemnify and hold the FHL Co. harmless against any loss by reason of its prime contract with the District and the work to be performed thereunder; that such agreement constituted a valid legal and enforceable contract of indemnity against the FHL Co. and was based on a valuable consideration.

Judgment was entered accordingly.

On July 23, 1963, Aalco wrote and forwarded to the FHL Co. the following letter:

"F. H. Linneman Construction Co., Inc.
1357 Harlan
Denver 14, Colorado
Attention: Mr. F. H. Linneman
          Re: Washington County Sewer
               Improvement District 2—
               Bartlesville, Oklahoma

Dear Sir:

In the event we are low bidders on the above named project, the Aalco Construction Co. hereby agrees and binds to you as a subcontractor as per our agreement. It further agrees to give our Corporation General Indemnity agreement and my personal indemnity to you for the length of the job as per our discussion with Jack Rose, your representative.

                    Respectfully,
                    Aalco Construction Co.
                    Robert W. Sewell
                    President"

■ In its original complaint, the FHL Co. predicated its claim against Sewell on such letter. In its amended complaint, however, it abandoned the letter as a basis for its claim against Sewell and relied on his oral contract of indemnity. The basis for recovery against Sewell in the original and in the amended complaint to a degree may be inconsistent. However, under the liberal construction placed on Rule 8(e) (2) and Rule 15 of the Federal Rules of Civil Procedure, an amendment of a complaint predicated on a new theory inconsistent with the allegations of the complaint is permitted when, as here, no prejudice results to the opposite party.[5]

5. Foman v. Davis, 371 U.S. 178, 179, 182, 83 S.Ct. 227, 9 L.Ed.2d 222; Porter v. Reid, D.C.Mass., 79 F.Supp. 898, 903; McHenry v. Ford Motor Co., 6 Cir., 269 F.2d 18, 25; Chamberlin v. United Engineers & Constructors, Inc., E.D.Pa., 194 F.Supp. 647, 649, 650; Dombrovskis v. Murff, S.D.N.Y., 24 F.R.D. 302, 304;

The oral contract of indemnity entered into by Sewell, personally, upon which the recovery against him was based, was not merged in the writing of July 23, 1963. The latter was a contract between Aalco and FHL Co. Sewell was not individually a party to it. Furthermore, while the writing refers to a contract of indemnity entered into individually by Sewell, it does not purport to set forth the terms of such contract, but for such terms it refers to the conversation between Rose and Sewell.

Aalco, in undertaking to construct the project, was not acting as the agent of the FHL Co. Substantial and creditable evidence supports the finding that Aalco was legally obligated to furnish the labor and materials and construct the project, in accordance with the terms and provisions of the prime contract. That finding is supported not only by substantial and creditable evidence, but by the five per cent contract and the surrounding facts and circumstances. Moreover, letters written by Aalco and action taken by it long after the prime contract and subcontract were entered into corroborate such finding.

■ On January 8, 1965, Aalco, through its attorney, wrote a letter to the FHL Co., demanding payment for labor and materials furnished by it and stating they were furnished on the project by "Aalco Construction Company, * * * which company was your subcontractor * * *," and on January 16, 1965, Aalco filed a mechanic's lien for $45,131.01, which it claimed to be due it for materials furnished on the project, and in which Aalco stated "that such work" was "performed and material furnished in pursuance of a contract with Linneman Construction Co., * * *."

The lien was filed at the direction of Sewell, acting for Aalco.

Also, in a letter dated December 15, 1964, to D. P. Bonham Transfer, Inc., signed by Aalco Construction Co., Aalco stated:

"We have a sub-contract with the F. H. Linneman Co. and do not require a purchase order from their office for necessary hauling of machinery from one location to another. * * *"

We conclude that the evidence fully established a valid and enforceable subcontract between the FHL Co. and Aalco.

■ The judgment was not excessive. The evidence fully supports the findings of the trial court. It was based on uncontroverted testimony of an unqualified audit made by a duly certified public accountant.

■ Under the law of Oklahoma, "a contract of 'guaranty' is a collateral undertaking," under which "the obligation is to answer for the debt, default, or miscarriage of another to the person with whom the contract is made"; while "in a contract of 'indemnity,' the undertaking is to make good and save harmless the person, with whom the contract is made, upon an obligation of such person to a third person." [6]

■ Here, Sewell guaranteed that a profit would be made on the performance of the construction contract, which was in effect a guarantee that no loss would be suffered by the FHL Co. It was a direct and independent contract by Sewell with the FHL Co. to save it harmless from any loss on the project.

■ A contract of indemnity is not within the Oklahoma Statute of Frauds and need not be in writing.[7]

Affirmed.

---

Riss & Co., Inc. v. Local 107, Int'l Brotherhood of Teamsters, Inc., E.D.Pa., 27 F.R.D. 7, 8.

**6.** Thomas v. Williams, 173 Okl. 601, 49 P.2d 557, 560; See also: Oppenheim v. National Surety Co., 105 Okl. 223, 231

P. 1076, 1077; Lehr v. Melton, 172 Okl. 150, 44 P.2d 111, 112; Howell v. Commissioner of Internal Revenue, 8 Cir., 69 F.2d 447, 450.

**7.** Thomas v. Williams, supra, at 562.