## FISCHER v. BASHWITZ.

No. 20065. Opinion Filed July 7, 1931.

M. Jermone Fischer and F. E. Riddle, for plaintiff in error.

Elton B. Hunt, for defendant in error.

CLARK, V. C. J. This action was commenced in the district court of Tulsa county, on the 24th day of November, 1926, by defendant in error, Solomon Bashwitz, against Edwin N. Fischer, plaintiff in error, for money judgment. The parties will be referred to as they appeared in the trial court.

Plaintiff alleged, in substance, that he purchased stock in an oil company in 1918 from the defendant, who was a director and stockholder therein, under the agreement and promise that, if plaintiff would purchase the stock, defendant would indemnify the said plaintiff and hold him harmless from any loss that he might sustain through the purchase of said stock, together with interest on his investment; relying on said promise and agreement, he purchased the stock; that later the company was taken over by another company, and, under the plan of reorganization, an allotment of stock in the new company was made to plaintiff, which was offered to plaintiff for cash; plaintiff refused to accept the allotment; that defendant, in order to induce plaintiff to accept the same and pay cash therefor, orally and in writing agreed to hold plaintiff harmless from any loss by reason of the purchase theretofore made, and also for any losses that might result from further purchase of stock in the new company; relying upon said agreement and promise, plaintiff accepted the allotment and paid cash therefor; that the stock has not paid dividends since 1922; that he believes the company is heavily indebted, and the stock is practically worthless, and has no market value whatsoever; that he has waited a reasonable time, and has offered all his stock to defendant demanding return of his money; defendant refused to pay same. Prayed judgment for the money invested therein, together with interest. Attached as exhibits letters with reference to the written part of the agreement.

Defendant demurred on grounds original and amended petition showed cause of action barred by statute of limitations, and did not state facts sufficient to constitute cause of action. Overruled; exception by defendant.

Answer of defendant was by way of general denial; alleged the cause of action was barred by the statute of limitations, and is within the statute of frauds and unenforceable; not supported by consideration; that plaintiff, having received dividends, enjoyed the ownership, benefit, profits, management, and control of the stock, is estopped to claim he sustained any loss.

Reply of plaintiff denied the allegations of new matter set up in the answer.

Motion for judgment on the pleadings was filed by defendant. Overruled. Exception.

Jury was waived; cause tried to the court; judgment rendered for plaintiff. Motion for new trial filed. Overruled. Defendant excepted. Defendant brings error.

Plaintiff in error treats his assignments of error under one general proposition, to wit:

"Under the pleadings and the undisputed testimony, the contractual relation between

plaintiff and defendant, if such there be, creating any legal relation and obligation, was that of indemnitor and indemnitee, and did not sustain the judgment rendered."

Briefly, the testimony discloses that plaintiff had known the defendant for about ten years, and that the defendant approached the plaintiff with reference to purchasing oil stock, and after his conversation with the defendant, he purchased stock in the original company, of which the defendant was stockholder and director. After holding the stock for some little time, and desiring to sell the same, the defendant advised him that under no circumstances should he sell the stock; that later the defendant approached the plaintiff with reference to the organization of a new company, and advised him that the stockholders in the old company would be allotted stock in the new company, which was to be paid for in cash. Plaintiff advised the defendant that he did not care to invest any further money in oil stock, and that he desired to sell the stock he had; that defendant advised plaintiff that if he would not sell his stock in the oil company, and come into the new company and pay for the additional stock, he would personally guarantee plaintiff against any loss of monies that he had paid for the old stock, and also any other monies that he would pay for the new stock, and that at any time he wanted his money back he would pay it to him. Plaintiff advised defendant that at that time he would not further invest; that later the defendant approached him and requested that he take up his allotted stock in the new company, and that he had written a letter to one Morris E. Jacobs, in which he had guaranteed that he held himself responsible for any monies that plaintiff had invested in the old company and any and all monies that he would invest for stock in the new company. Plaintiff advised defendant that he had been given the letter; that then the defendant read the letter and said the letter would cover plaintiff fully for the money he had paid in the old company and for any monies that he would pay for stock in the new company. Plaintiff told the defendant that he would rely on his promise to repay any monies that he invested in the two companies, and would send check for same, and relying solely on his promises to repay, he purchased the stock and so advised the defendant; that plaintiff and defendant had other conversations, wherein the defendant acknowledged that he was personally liable for any loss plaintiff would sustain, and that under no circumstances should plaintiff sell his stock; that later on, in 1925 and 1926, plaintiff made inquiry as to the value

of the stock from brokers, and found no bid nor sale for the stock; that in one instance 60 shares of preferred stock and 600 shares of common stock had been sold for $50 for the whole lot; that during the years 1924 and 1925, he demanded his money back from the defendant; it was refused, and the defendant advised plaintiff that he was personally responsible for it, that it would ultimately be valuable, and that, if plaintiff would be patient, he would repay him his money; that he was not able to do so at that time.

Letters were introduced showing the issuance of stock, receipts for the money therefor, and acknowledging liability.

Exhibit 4. Letter from defendant to one J. C. Jacobs states, in part:

"Wish to say that I have already on my own account given you assurance that I will hold myself personally responsible for the investment that you and the Bashwitz Brothers have or may make in the Enfisco Oil Corporation. I have no hesitancy to now pledge myself to this."

Exhibit 5. Letter from defendant to plaintiff states, in part:

"I write to advise you that I received from Mr. Jacobs your check for $17,500, which is to be invested in the Enfisco Oil Corporation. In this connection, I want you to know that I sure understand the reason for your interest in me. I am fully mindful, and not alone do I hold myself responsible, but will at the opportune time show you my appreciation."

Exhibit 10. Letter from defendant to plaintiff, which states, in part:

"I write to say that it is true that I promised to guard your interest in this corporation, and that I hold myself personally liable in case there would be a loss."

"I am very sorry that you really need the money and that I cannot take up your stock."

Exhibit 11. Letter from the defendant to attorneys for plaintiff states, in part:

"I am in receipt of yours of December 8th regarding Solomon and Julius Bashwitz's investment in preferred and common stock, which they own in the Enfisco Oil Corporation, and wish to advise you that there has been no loss incurred to them on this stock, as the dividends on the preferred are accumulative.

"Therefore I wish to serve notice upon you and your clients that if this stock is sold or even an attempt made to sell it at a loss * * * without * * * my consent * * * my personal responsibility ceased without any further notice on my part."

Exhibit 12. Letter offering return of the

stock to the defendant upon a payment made by plaintiff.

Exhibit 15. A demand is made by plaintiff on defendant for the return of the investment of plaintiff and served notice that they will offer the stock for sale at public auction if same is not taken up and hold the defendant liable for the difference realized for said stock and the amount of plaintiff's investment.

The defendant testified, in substance, that he was and had been president of the oil company since its organization, and was stockholder and director therein. Known the plaintiff a great many years. Plaintiff purchased the stock. Plaintiff had $5,000 stock in the old company, of which defendant was president, director, and a stockholder, and had option to take $7,500 cash therefor, or stock in new company. Denied the conversations testified to by plaintiff occurred at the time and place indicated. Admitted writing the letters introduced. Stated the plaintiff voluntarily subscribed for the stock in the new company. Would not say that he never offered to be responsible in any way for the plaintiff's stock, and further testified, in explanation of the letters:

"At the time when we were discussing the purchase of the stock, Mr. Bashwitz wanted to know whether we were giving away a good deal of that stock as promotion, and I assured him that that was not the case, and that is what I referred to in that paragraph; I would hold myself responsible to that extent"

—and further testified that he meant that he would protect their interest in the same way as he would his own; that he was a friend of the plaintiff, and did not want to see him dispose of the stock for nothing when the stock was actually worth the money; that the stock plaintiff was purchasing was worth 100 cents on the dollar

A "guaranty" is defined by section 5123, O. O. S. 1921, as follows:

"A guaranty is a promise to answer for the debt, default, or miscarriage of another."

And section 5126, O. O. S. 1921, defines when guaranty must be in writing:

"Except as prescribed by the next section, a guaranty must be in writing, and signed by the guarantor; but the writing need not express a consideration."

And section 5127 defines "original obligation," which need not be in writing:

"A promise to answer for the obligation of another, in any of the following cases, is deemed an original obligation of the promisor, and need not be in writing:

"First: Where the promise is made by one who has received property of another upon an undertaking to apply it pursuant to such promise; or by one who has received a discharge from an obligation in whole or in part, in consideration of such promise.

"Second: Where the creditor parts with value, or enters into an obligation, in consideration of the obligation in respect to which the promise is made, in terms or under circumstances such as to render the party making the promise the principal debtor, and the person in whose behalf it is made his surety. * * *"

"Indemnity" is defined by section 5171, O. O. S. 1921, as follows:

"'Indemnity' is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person."

The case at bar seems to us to involve but a single, plain, fundamental principle, not calling for extended discussion, in this, a contract of guaranty is a collateral undertaking. It cannot exist without the presence of a main or substantive liability on the part of a third person, either express or implied.

If there is no primary liability of a third person to the promisee which continues after the promise is made, it is an original promise and need not be in writing.

The corporation from which plaintiff purchased the stock owed him no duty in the premises after such purchase was consummated, except the general obligation to him, in common with all other shareholders, to fairly and impartially conduct the business. It was the defendant who entered into contract with plaintiff.

In the case of Kilbride v. Moss (Cal.) 54 Am. St. Rep. 361, which was a similar case to the case at bar, the court said in the syllabus:

"If a person is induced to purchase stock in a corporation by the request and verbal promise of a stockholder therein, that he will return to the purchaser the money paid for the stock if it shall become worthless, such promise is an original contract, not required to be in writing, and which binds the promisor personally. Such promise is not a verbal contract of guaranty, nor to answer for the debt, default, nor miscarriage of another.

"'Guaranty' is a collateral undertaking and cannot exist without the presence of a main or substantive liability to which it is collateral. If there is no substantive liability on the part of a third person, either express or implied, that is to say, no debt, default, or miscarriage of another, present

234

or prospective, there can be no contract of guaranty.

"If there is no primary liability of a third person to the promisee which continues after the promise is made, it is an original promise and need not be in writing."

And in the case of Trenholm v. Kloepper (Neb.) 129 N. W. 436, in the first and second paragraphs of the syllabus, the court said:

"If an officer of a corporation orally promises a prospective purchaser of the corporation stock to repay the purchase price at any time, and the purchaser acts upon the promise, the agreement is an original contract, and is not within the statute of frauds. The promisor does not thereby agree to answer for the debt, default, or misdoings of another person, nor does he agree to purchase goods, wares, merchandise, or things in action.

"And, in such a case, the purchaser is not estopped from maintaining her action because, intermediate the date of her purchase and the day she requested the promisor to perform, she surrendered her certificate to the corporation and received in lieu thereof another certificate representing her original purchase, and a stock dividend."

In the case at bar, evidence was introduced showing that the promise was both oral and in writing as evidenced by letters introduced in evidence.

In the case of Stone v. Spencer, 79 Okla. 85, 191 Pac. 197, this court said in the second paragraph of the syllabus thereof:

"When the writing does not purport to disclose the complete contract, or if, when read in the light of attendant facts and circumstances, it is apparent that it contains only a part of the agreement entered into by the parties, parol evidence is admissible to show what the rest of the agreement was; but such parol evidence must not be inconsistent with or repugnant to the intention of the parties as shown by the written instrument."

This is a law action tried to the court. and, under the well-established rule in this state, a judgment and finding of the trial court in a law action has the same force and effect as a verdict of the jury, and the same will not be disturbed in this court on appeal where there is any competent evidence reasonably supported the same.

A review of the entire record, and the law applicable thereto, will disclose the evidence offered is sufficient to support the judgment of the trial court. The judgment is therefore affirmed.

LESTER, C. J., and RILEY, HEFNER, CULLISON, SWINDALL, ANDREWS, and KORNEGAY, JJ., concur. McNEILL, J., disqualified, not participating.