**Evalyn TICE, Appellee,**

v.

**Charles W. TICE, Appellant.**

No. 57996.

Supreme Court of Oklahoma.

Nov. 22, 1983.

James O. Braly, Durant, for appellee.

Mordy, Clark & Hester, Inc. by James A. Clark, Ardmore, for appellant.

HODGES, Justice.

The question presented is whether a person, who induces another to marry by the oral promise to reimburse any lost alimony in the event of a subsequent divorce, is liable to pay alimony awarded under a previous divorce decree.

Evalyn (appellee-wife) and Charles Tice (appellant-husband) were married in Las Vegas, Nevada on December 31, 1979. Previously, Evalyn had received an alimony award from her first husband in the amount of $72,000.00. The divorce decree provided that the alimony would terminate upon her death or remarriage. At the time of her marriage to Charles, there was $44,500.00 remaining to be paid. On July 18, 1980, Evalyn filed a divorce petition, alleg-

ing that Charles had orally agreed to indemnify her for the alimony which she would lose as a result of their marriage; and, that this promise was made as an inducement for the marriage. The trial court severed the two causes of action. A divorce was granted, and the action based on the indemnification agreement was set for jury trial which was waived by Evalyn. The trial judge made factual findings that: as an inducement to marriage Charles promised to indemnify Evalyn; in reliance upon this promise Evalyn promised to marry him; and that Charles did not intend to fulfill his promise.

The facts were disputed. According to Evalyn, numerous proposals of marriage were made to her before she accepted. Confronted with the forfeiture of her right to the alimony payments from her former husband, she told Charles the latter part of October, 1979, that she "couldn't afford to give up" her alimony. Charles assured her that he could make her a "good living" and that she would not need the alimony. Evalyn responded that if the marriage did not work out, she could not live on her salary as a secretary. Evalyn testified that Charles told her son that he bought a Mark V to match Evalyn's coloring, and that he would give it to her if she married him. She told Charles the certainty of forfeiting the right to alimony was the only reason she would not accept his proposal. Charles told her he would put $45,000.00 in escrow, the amount which she would have received had she not remarried. Evalyn testified that this was the only reason she married Charles.

Charles denied that he had ever promised to indemnify Evalyn for any loss resulting from the marriage. His testimony was that: both parties had been previously married; Evalyn told him of her right to alimo-

ny as a result of the termination of her prior marriage; he disclosed his financial obligations and indebtedness to her; Evalyn knew his economic condition would not warrant the payment of $45,000.00; and the first time Evalyn ever mentioned indemnity of the lost alimony was when she first threatened divorce. The court ordered Charles to pay $41,900.00 to Evalyn to compensate her for the alimony which was terminated when she married him.

It is argued on appeal that the evidence presented was insufficient to warrant judgment for Evalyn; the alleged antenuptial agreement was not reduced to writing nor fraudulently induced, and that even if a contract existed it was a contract of guaranty which must be in writing.

### I

■ The dispositive issues are whether Charles fraudulently induced Evalyn to marry him, and if the promise must be in writing. The statute of frauds requires that an agreement made upon consideration of marriage, other than mutual promises to marry, must be in writing to be enforceable.[1] Evalyn testified at trial that Charles promised to reimburse her for any loss from the previous divorce decree. She stated that she would not have married Charles had he refused to make the promise, and that it was the only reason she married him. This testimony established that the sole consideration for the agreement was the marriage of the parties.

■ Under the facts of this case, because the agreement is not in writing, Evalyn may only recover if Charles fraudulently induced her to marry him by promising to compensate her for her losses.[2] Mar-

1. Title 15 O.S. 1981 § 136 provides in pertinent part:

   "The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or by his agent:

   \* \* \* \* \* \*

   "3. An agreement upon consideration of marriage, other than a mutual promise to marry."

See also *Byers v. Byers,* 618 P.2d 930, 933 (Okl.1980); *Stanley v. Madison,* 11 Okl. 288, 66 P. 280 (1901).

2. *Sellers v. Sellers,* 428 P.2d 230, 240 (Okl. 1967); *Scrivner v. Scrivner,* 207 Okl. 225, 248 P.2d 1045, 1046 (1952); *Whitney v. Whitney,* 194 Okl. 361, 151 P.2d 583 (1944); *In Re Cantrell's Estate,* 154 Kan. 545, 119 P.2d 483 (1942); *Mashunkashey v. Mashunkashey,* 189 Okl. 60, 113 P.2d 190 (1941).

riage is a personal relation which arises from a civil contract, and which requires the voluntary consent of parties who have the legal capacity to contract. It is a present agreement to be husband and wife and to assume all rights and duties of the marital relationship.[3] A common law duty to perform with care, skill, reasonable expediency and faithfulness accompanies every contract.[4] Insofar as property interests are concerned, marriage is founded on business principles in which utmost good faith is required from all parties, and fraud in the inducement of a marriage is the subject of judicial cognizance.[5] Actionable fraud consists of a false material representation made as a positive assertion which is known either to be false, or made recklessly without knowledge of the truth, with the intention that it be acted upon, and which is relied upon by a party to his/her detriment.[6] Fraud can be predicated upon a promise to do a thing in the future when the promisor's intent is otherwise. The basis of fraudulent misrepresentation is the creation of a false impression and damage sustained as a natural and probable consequence of the act charged.[7] The fraudulent representation need not be the sole inducement which causes a party to take the action from which the injury ensued. The key is that without the representation the party would not have acted.[8] The liability for misrepresentation depends upon whether the person relying thereon was in fact deceived, not upon whether an ordinarily prudent person should have been misled.[9]

Fraud is never presumed, but must be proven by clear and convincing evidence.[10] Evalyn had the burden of prov-ing that the promise was made, and that Charles did not intend to perform the promise. The testimony of the parties to this action is in conflict. When fraud is properly alleged by one party and denied by the other party, the existence or non-existence of fraud becomes a question of fact.[11] The trial court specifically found that: a party to a marriage should not suffer detriment because of the fraud of the other party. Charles promised to indemnify Evalyn for any loss of alimony which she might suffer as the result of the marriage as an inducement to the marriage; in reliance upon his promise, she agreed to marry him; and that Charles did not intend to fulfill his promise. The factual findings will not be disturbed on appeal by this Court if there is any evidence reasonably tending to support the verdict.[12] The testimony supports the trial court's conclusion that Charles fraudulently induced Evalyn to marry him.

AFFIRMED.

BARNES, C.J., and IRWIN, HARGRAVE, OPALA and WILSON, JJ., concur.

SIMMS, V.C.J., and LAVENDER and DOOLIN, JJ., dissent.

---

3. See Title 43 O.S.1981 § 1; *Williams v. Williams,* 543 P.2d 1401, 1403 (Okl.1976); *Beach v. Beach,* 160 Iowa 346, 141 N.W. 921–22 (1913).

4. *Okla. Natural Gas Co. v. Pack,* 186 Okl. 330, 97 P.2d 768, 770 (1940).

5. *Beach v. Beach,* note 3, supra.

6. *Miller v. Long,* 210 P.2d 147, 150 (Okl.1949).

7. *State ex rel. Southwestern Bell Telephone Co. v. Brown,* 519 P.2d 491, 495 (Okl.1974).

8. *Allen v. Pendarvis,* 60 Okl. 216, 159 P. 1117 (1916).

9. *Jones v. Spencer,* 197 Okl. 608, 173 P.2d 745, 747 (1946).

10. *Scrivner v. Scrivner,* note 2, supra.

11. *Operators Royalty & Producing Co. v. Greene,* 173 Okl. 388, 49 P.2d 499, 502 (1935).

12. *Fisher v. Bashwitz,* 152 Okl. 231, 5 P.2d 356, 358 (1931).