**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 22, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JOHN COOK,

      Plaintiff - Appellee,

v.

MEDICAL SAVINGS INSURANCE
COMPANY, an Indiana Corporation,

      Defendant - Appellant.

No. 06-6233
(D.C. No. CV-05-289-C)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **GORSUCH**, Circuit Judges, and **BRIMMER**, District Judge.[**]

---

After a five day trial in this diversity action, a jury found that Medical

Savings Insurance Company ("MSIC") misrepresented the scope and nature of its

insurance coverage, committing fraud against its insured, John Cook. In doing so,

the jury awarded Mr. Cook $550,000 in compensatory damages and $550,000 in

punitive damages. After trial, MSIC moved for judgment as a matter of law and a

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

[**] The Honorable Clarence A. Brimmer, United States District Judge for
the District of Wyoming, sitting by designation.

new trial or remittitur.  The district court denied each of these motions and MSIC appealed.  We now affirm.

I

Viewing the facts in the light most favorable to the jury's verdict, as we must, they indicate that, based on a referral from his accountant, Mr. Cook spoke with Troy Russell, an authorized insurance agent for MSIC, in the fall of 2003 about purchasing an MSIC health insurance policy.  According to Mr. Cook, Mr. Russell represented that an MSIC policy would have a $5,000 deductible, which could be funded using a tax-advantaged health savings account, and that MSIC would pay 100 percent of medical expenses above the deductible amount, up to $1,000,000.  Mr. Russell echoed and clarified this point, testifying at trial that he represented the policy would cover 100 percent of "reasonable and customary charges" above the deductible amount, up to $1,000,000.  The insurance policy itself (which Mr. Cook received but apparently did not read) confirmed this coverage and defined "reasonable and customary charge" as the most common charge for particular services or supplies – defined as an amount equal or in excess of that charged by two-thirds of the providers in the area – so long as those charges could be considered reasonable.  The policy then listed seven factors MSIC was permitted to consider in determining the reasonableness of a charge, including the skill and time required to perform the procedure, the severity of the condition being treated, the amount charged for similar services or supplies in the

locality and in other parts of the country, and the cost to the provider, among other things.

Unknown to Mr. Cook and undisclosed in the MSIC policy, MSIC actually enforced a different rule. Starting in 2001, MSIC decided that, for hospital bills over $3,000, it would pay only the reimbursement rate paid by Medicare for the procedure in question plus 26 percent – and would do so even though MSIC usually had no guarantee hospitals would accept that amount as payment in full. As a result, MSIC paid an average of only 30 to 40 percent of billed charges. MSIC did not publicly disclose its internal Medicare plus 26 percent reimbursement rule until December 2003, about two months after Mr. Cook purchased the policy, and then did so only in response to prodding from the Oklahoma Department of Insurance, which had received complaints about MSIC and forced MSIC to remove the "reasonable and customary charge" language from its policy. Even then, however, in its disclosure letter to its policyholders, MSIC indicated that it would pay Medicare plus 26 percent only for claims incurred before January 1, 2004, and that claims incurred after that date would be paid in accordance with a new set of procedures outlined in an enclosed endorsement. The endorsement replaced the "reasonable and customary charge" language of the MSIC policy sold to Mr. Cook with a new term – "reimbursable charge" – but then proceeded to define that term in much the same way as "reasonable and customary charge," albeit with some modifications. The new

definition explained that reimbursable charges could be less than the fees actually charged and that any excess would be the policyholder's responsibility. It also added two new factors to the list that MSIC could consider when determining whether a charge was reimbursable: billed charges and "Medicare diagnostic or procedure codes, and reimbursement rates, with appropriate markups to reflect national average payment or reimbursement rates." Aplt. App. at 83. Mr. Cook testified he never saw the December 2003 letter and endorsement.

In August 2004, Mr. Cook was diagnosed with prostate cancer, for which he underwent surgery in September. He incurred a bill of $19,531.45 for the surgery, but MSIC agreed to pay only $6,970.50. That number represented the applicable Medicare charge plus 26 percent, with a 25 percent penalty deduction because Mr. Cook did not "pre-certify" the surgery with MSIC. According to evidence at trial, even though services were incurred in 2004 and thus purportedly subject to MSIC's new "reimbursable charge" endorsement formula, MSIC did not consider the most common charge for the services billed to Mr. Cook or any other factors listed in its reimbursable charge endorsement; instead, it simply applied its longstanding Medicare plus 26 percent rule. When MSIC sent the hospital a check for $6,970.50 as payment in full, the hospital rejected the payment and billed Mr. Cook for the full amount.

MSIC informed Mr. Cook that, if he chose to dispute his bill with the hospital, MSIC would pay his attorneys fees. Instead, Mr. Cook brought this suit

against MSIC. He alleged that MSIC committed fraud when it sold him the insurance policy and breached its duty of good faith and fair dealing by refusing to pay his hospital bill; he sought both compensatory and punitive damages. The district court denied summary judgment for MSIC and partial summary judgment for Mr. Cook and the case proceeded to trial, where a jury found in favor of MSIC on the good faith claim and in favor of Mr. Cook on the fraud claim, ultimately awarding Mr. Cook $550,000 in compensatory damages and $550,000 in punitive damages. The district court denied MSIC's various post-trial motions and MSIC timely appealed. We address first MSIC's arguments with respect to liability and then its contentions on damages.

II

MSIC argues that, notwithstanding the jury's verdict, the evidence presented by Mr. Cook was insufficient to prove it committed fraud as a matter of law. We review a district court's denial of a motion for judgment as a matter of law *de novo*. *See Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1086 (10th Cir. 2007). In doing so we will "not weigh the evidence, pass on the credibility of the witnesses, or substitute our conclusions for those of the jury," but will instead "view the evidence and any inferences to be drawn therefrom most favorably to the non-moving party." *Id.* (internal quotation omitted). We may enter judgment as a matter of law "only if the evidence points but one way and is susceptible to no reasonable inference supporting the party opposing the motion,"

such that "there is no legally sufficient evidentiary basis with respect to a claim or defense under the controlling law." *Id.* (internal quotation omitted).

Before us, MSIC does not object to the district court's legal instructions to the jury, but instead confines itself to arguing that Mr. Cook's proof failed as a matter of law to establish intentional or reckless conduct by MSIC, justifiable reliance by Mr. Cook, or any injury to him. We consider each of MSIC's liability arguments in turn.

1.   MSIC argues that Mr. Cook failed to prove the requisite *mens rea* for fraud as a matter of law because he did not present evidence that Mr. Russell, MSIC's insurance agent, intentionally or recklessly misrepresented the policy to Mr. Cook. This contention, however, simply misconceives the nature of Mr. Cook's suit. Mr. Cook did not sue Mr. Russell or allege that Mr. Russell intentionally misled him. Rather, his theory at trial was that, while Mr. Russell may have been "honorable," as Mr. Cook himself testified, MSIC withheld full information about the company's policies from its own sales agents. Aplt. App. at 406. That is, in Mr. Cook's theory of the case, MSIC misled even Mr. Russell, by failing to disclose to him its true Medicare plus 26 rule for reimbursements.

MSIC offers no reason why the jury could not have found that this is exactly what occurred. Indeed, Mr. Russell and another MSIC agent testified that they had believed the "100 percent of reasonable and customary" provision in MSIC's policies meant that MSIC would generally base its reimbursement

- 6 -

decision on what health care providers in the area were charging. *See* Aplt. App. at 440-441; Aple. App. at 362. A reasonable jury could conclude that neither knew MSIC was, instead, simply enforcing a Medicare plus 26 percent rule. *See* Aple. App. at 361; Aplt. App. at 439-42. In fact, when the other agent discovered the Medicare plus 26 percent formula after MSIC reduced payment on a client's bill, he was so surprised and troubled that he took the "unusual" step of notifying his other clients and advising them to change insurers. Aple. App. at 368, 361-68.

2. Next, MSIC argues that Mr. Cook did not demonstrate that he reasonably relied on MSIC's misrepresentation. This argument has two prongs: Did Mr. Cook present evidence of actual reliance? And was his reliance reasonable?

On the first of these questions, MSIC argues that Mr. Cook did not actually rely on Mr. Russell's representations about its reimbursement policy by pointing to testimony indicating that Mr. Cook sought insurance advice from his accountant and that he did not find Mr. Russell to be a very strong salesman. But the record is replete with evidence from Mr. Cook that, although he consulted his accountant, he did in fact rely on Mr. Russell's representations about the policy's terms in deciding to purchase it and would not have purchased the MSIC policy had he known the truth. *See* Aplt. App. at 372-77, 363-64. The jury was free to credit this testimony and find it sufficient to establish actual reliance. *See Tice v.*

*Tice*, 672 P.2d 1168, 1171 (Okla. 1983) ("The fraudulent representation need not be the sole inducement which causes a party to take the action from which the injury ensued. The key is that without the representation the party would not have acted.").

Second, MSIC argues that no reasonable person could rely on a salesman's statement that a health insurance policy pays for "everything" above a $5,000 deductible.[1] As it happens, however, although Mr. Cook testified that he was led to believe MSIC's policy would cover 100 percent of his medical expenses above the deductible up to $1,000,000, he never disputed that the MSIC policy contained certain exclusions and limitations defining what expenses were covered. Further, Mr. Russell testified that he told Mr. Cook not that the policy

---

[1] MSIC raised the legal reasonableness of Mr. Cook's reliance in its motion for summary judgment before trial but did not renew the argument in its post-trial motion for judgment as a matter of law. When "the denial of summary judgment is based on the interpretation of a purely legal question, such a decision is appealable after final judgment" at trial, despite a party's failure to renew its argument. *Wolfgang v. Mid-Am. Motorsports, Inc.*, 111 F.3d 1515, 1521 (10th Cir. 1997). The district court denied summary judgment on this issue on a purely legal basis, so we may review it.

Although MSIC argues on appeal that Mr. Cook's reliance must be "justifiable," we conclude his reliance passes the arguably higher standard of "reasonableness," as required by Oklahoma law. *See Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1164-65 (10th Cir. 2004) ("Oklahoma law requires . . . 'reasonable reliance' on misrepresentations, and . . . 'an action for fraud may not be predicated on false statements when the allegedly defrauded party could have ascertained the truth with reasonable diligence.'" (quoting *Silver v. Slusher*, 770 P.2d 878, 882 n.8 (Okla. 1988)); *Eckert v. Flair Agency, Inc.*, 909 P.2d 1201, 1206 (Okla. Civ. App. 1995); *see also Field v. Mans*, 516 U.S. 59, 70-72 (1995) (comparing justifiable and reasonable reliance).

- 8 -

would pay for "everything," but that it would cover "reasonable and customary" charges. Viewing the evidence in the light most favorable to the jury's verdict, as we are obliged to do, the jury was free to infer from this evidence that Mr. Russell sold the policy on the basis that it would cover reasonable and customary charges up to $1,000,000 – not that it would cover "everything" – and that this was the representation on which Mr. Cook relied. MSIC does not argue that reasonable reliance on such a representation is impossible – nor could it, as its own policy solicited business on the basis of just such a promise.

Alternatively, MSIC argues that Mr. Cook could not have reasonably relied solely on Mr. Russell's oral representations when he was given a written policy to review. We need not address whether Oklahoma requires an insured to read his or her policy in order to discover the insurer's misrepresentations, however, because Mr. Cook could not have ascertained the truth by doing so. *See Silver v. Slusher*, 770 P.2d 878, 882 n.8 (Okla. 1988) ("An action for fraud may not be predicated on false statements when the allegedly defrauded party *could have ascertained the truth* with reasonable diligence." (emphasis added)). The policy Mr. Cook received specified that MSIC would pay all "reasonable and customary charges," defined as the most common charge for particular services or supplies as determined by calculating what two-thirds of the providers in the area are charging for the same service or supplies, limited by reasonableness. The list of factors MSIC could consider in determining whether a charge was reasonable did

not include the Medicare plus 26 percent formula or any other indication that MSIC would only pay according to such a rule.

Finally, MSIC argues that Mr. Cook's reliance on its misrepresentation was no longer reasonable after MSIC sent him the December letter and policy endorsement. On appeal, MSIC does not contest the district court's conclusion that the endorsement failed to constitute a valid amendment of the policy under Oklahoma insurance law; instead, even assuming the endorsement did not comply with Oklahoma insurance law requirements, MSIC asserts that it put Mr. Cook on notice of the true coverage of the policy and the falsity of the previous misrepresentation, making any further reliance on that misrepresentation unreasonable for purposes of a common law fraud claim. Even assuming without deciding that a legally inoperative endorsement can operate as a disclosure precluding claims of fraud, the December correspondence, as with the original policy, simply failed to indicate the truth about how MSIC would reimburse Mr. Cook's medical expenses; accordingly, it did not render his reliance on MSIC's previous misrepresentations unreasonable. *See Silver*, 770 P.2d at 882 n.8 ("An action for fraud may not be predicated on false statements when the allegedly defrauded party *could have ascertained the truth* with reasonable diligence." (emphasis added)).

The December letter stated that MSIC would pay Medicare plus 26 percent on claims incurred *prior* to January 1, 2004 and would pay according to the

endorsement for claims, like Mr. Cook's, arising after that date. The endorsement purported to change "reasonable and customary charge" to "reimbursable charge," but left the definition largely the same, still defining it as the most common charge for particular services or supplies as determined by calculating what two-thirds of the providers in the area are charging for the same service or supplies, limited by reasonableness. To be sure, the endorsement added to the existing list of reasonableness factors "Medicare diagnostic or procedure codes, and reimbursement rates, with appropriate markups to reflect national average payment or reimbursement rates," and billed charges if "less than a reasonable charge." Aplt. App. at 83. But nowhere did the endorsement suggest that MSIC – contrary to the endorsement – would not even consider what the most common charge for a particular procedure was but instead would automatically reduce payment on medical bills accruing even after January 1, 2004 to Medicare plus 26 percent, ultimately paying only 30 to 40 percent of billed charges. Based on this, a reasonable jury could conclude that Mr. Cook could not reasonably ascertain the truth about MSIC's coverage from the December correspondence.

3. Lastly, MSIC asserts that, because it agreed to pay his hospital bill in full after he sued, Mr. Cook lacked evidence of economic damages and, thus, any injury cognizable in an Oklahoma common law fraud claim. This argument has at least two defects. First, Mr. Cook did testify to economic damages, including the fact that he personally paid $1,400 for an MRI because the hospital would not

honor his MSIC insurance card and that he was improperly charged over $2,000 for a pre-certification penalty.  Second, although MSIC is correct that damages for non-economic injuries such as mere embarrassment usually are not available in fraud under Oklahoma law, damages for mental and emotional distress are.  *See* Okla. Stat. tit. 76 § 2; *Mashunkashey v. Mashunkashey*, 113 P.2d 190, 191 (Okla. 1941); *Coble v. Bowers*, 809 P.2d 69, 73 (Okla. Civ. App. 1990).  And, in testimony MSIC does not now challenge as improperly received by the district court, Mr. Cook spoke at length about the mental and emotional distress he and his wife suffered as a result of MSIC's fraud and their discovery that Mr. Cook did not have adequate health insurance during his struggle with cancer.  On this unchallenged record, the jury was free to find that Mr. Cook's injury rose above the level of mere embarrassment and is thus compensable in fraud under Oklahoma law.[2]

---

[2]  MSIC also argues, for the first time on appeal, that the jury's verdict in MSIC's favor on the bad faith claim contradicts its verdict in Mr. Cook's favor on the fraud claim and forecloses the possibility of recovery for fraud.  As a general rule, we will not consider an issue raised for the first time on appeal, and MSIC offers us no reason to vary from the rule in this instance.  *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976); *Hicks v. Gates Rubber Co.*, 928 F.2d 966, 970 (10th Cir. 1991).

Separately, we note that MSIC purports to seek a new trial on the issue of liability as well but does not actually provide any discussion of this point as such in its briefs.  Under our case law, "[a]rguments inadequately briefed in the opening brief are waived," *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998), and, in any event, based on the arguments MSIC adduces for judgment as a matter of law we see nothing that would merit a new trial on

(continued...)

III

MSIC challenges the jury's damages award to Mr. Cook on three grounds, asserting that the punitive damages award is inappropriate as a matter of law, that the punitive damage jury instruction was unconstitutional, and that the compensatory and punitive damages are excessive and should be remitted. We evaluate the first two legal contentions *de novo* and the final, discretionary, argument under a more deferential standard of review.

A

MSIC's argument that the jury's punitive damages award fails as a matter of law itself has two different components. First, MSIC claims that it cannot be liable in punitive damages for the misrepresentations of its soliciting agent because the company did not know of or ratify the agent's actions. But MSIC admits that Mr. Russell was one of its soliciting agents and does not dispute that he was acting within the scope of his employment as an insurance salesman when he made the misrepresentations to Mr. Cook regarding the MSIC policy. Under settled Oklahoma law, this is sufficient to expose MSIC to liability:

> Oklahoma does not impose the ratification requirement of Section
> 909 of the Restatement (Second) of Torts; thus it would be possible

---

[2](...continued)
liability because the jury's verdict, if not the only possible outcome here, was not against the great weight of the evidence. *See Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1157 (10th Cir. 2006) ("The jury's verdict . . . must be upheld unless it is clearly, decidedly or overwhelmingly against the weight of the evidence." (quotation omitted)).

for the jury to have imposed punitive damages against [the defendant company] even without finding that it participated in or authorized the negligent acts of its employees. *See Kurn v. Radencic*, 141 P.2d 580, 581 (Okla. 1943) ("In this jurisdiction [exemplary damages] may be awarded against a principal or employer for the act of an agent or employee even though the principal did not personally participate in, authorize or ratify the act complained of."). *See also Rodebush v. Okla. Nursing Homes, Ltd.*, 867 P.2d 1241, 1245-46 (Okla. 1993) (holding nursing home liable for the intentional tort of its employee); *Moore v. Target Stores, Inc.*, 571 P.2d 1236, 1240-41 (Okla. Civ. App. 1977) ("Exemplary damages may be awarded against Target for the act of his [sic] agent even though the principal did not personally participate in or ratify the act.").

*Magnum Foods, Inc. v. Cont'l Cas. Co.*, 36 F.3d 1491, 1498 n.5 (10th Cir. 1994).

Oklahoma has consistently applied the doctrine of respondeat superior for purposes of punitive damages, and as recently as 1999 the Oklahoma Supreme Court confirmed that "[p]unitive damages may be assessed against a principal or employer for the acts of its agents or employees if the agent or employee is acting within the scope of his or her employment." *Sides v. John Cordes, Inc.*, 981 P.2d 301, 306 n.16 (Okla. 1999).

Second, MSIC argues that the evidence at trial was insufficient to support an award of punitive damages because its conduct "does not demonstrate the elements of fraud or evil intent to which punitive damages are directed." Opening Br. at 45. But Oklahoma law specifically authorizes punitive damages when a defendant is guilty of fraud or of "reckless disregard for the rights of others." Okla. Stat. tit. 23 § 9.1(B)(1); *see Sides*, 981 P.2d at 306. And, as we have already amply outlined, sufficient evidence existed from which the jury could

conclude that MSIC intentionally or recklessly misrepresented its insurance

coverage to induce Mr. Cook to purchase MSIC insurance, resulting in injury to

Mr. Cook.  *See supra* Part II.

B

By way of a post-briefing Fed. R. App. P. 28(j) letter, MSIC argues that the

punitive damage award in this case was unconstitutional under *Philip Morris USA*

*v. Williams*, 127 S. Ct. 1057 (2007), because the jury should have been instructed

that it could not punish MSIC for injury to persons other than Mr. Cook.  MSIC

admits that it did not object to the jury instructions on this basis in the district

court or request an instruction to this effect; neither did MSIC raise such an

argument in either its opening or reply briefs on appeal.  Yet, it could have done

all this.  The question whether such an instruction is necessary was hotly

contested in other cases at the time of this trial.[3]  The Supreme Court granted

certiorari in the *Williams* case on May 30, 2006, before the district court's June

---

[3]  *Compare, e.g.*, *Univ. Med. Assoc. of Med. Univ. of S.C. v. UNUMProvident Corp.*, 335 F. Supp. 2d 702, 711 (D.S.C. 2004) (relying on subsequent wrongful conduct to enhance punitive award because such conduct "would result in precisely the type of repetitive harm contemplated in *State Farm* as ripe for larger punitive damage awards"), *with Gober v. Ralph's Grocery Co.*, 137 Cal. App. 4th 204, 223 (Cal. Ct. App. 2006) (refusing to consider subsequent wrongful conduct because "hypothetical claims of other potential plaintiffs cannot be used to increase" the plaintiffs' punitive award), *and Wohlwend v. Edwards*, 796 N.E.2d 781, 786-87 (Ind. Ct. App. 2005) (trial court erred in admitting evidence of subsequent wrongful conduct because of danger it would be used to punish defendant for conduct other than that giving rise to plaintiff's actual damages).

12, 2006 ruling on MSIC's motion for remittitur or a new trial, and before any appellate briefing took place. The Court decided *Williams* on February 20, 2007, two days before MSIC's reply brief on appeal was due, yet even then MSIC waited nearly three additional weeks after appellate briefing in this matter was closed before first mentioning *Williams* in a March 12, 2007 Rule 28(j) letter.

To be sure, we recognize that in some circumstances an appellate court may allow a party to raise an issue out of time because of an intervening change in the law. *See Employers Reins. Corp. v. Mid-Continent Cas. Co.*, 358 F.3d 757, 776 (10th Cir. 2004). But the intervening law exception does not give litigants a second chance to raise new arguments whenever any supporting decision is handed down. Rather, our precedent indicates only that, if the intervening decision overrules or is contrary to previously controlling circuit precedent or is otherwise a material change in the law such that objecting or raising the argument earlier would have been futile, a party will be allowed to raise an argument under the new decision on appeal despite failing to preserve the issue.[4] If, however, the

_____

[4] *See United States v. Novey*, 922 F.2d 624, 629 (10th Cir. 1991) (intervening decision overruled previously controlling precedent); *Peterson v. Shearson/Am. Express, Inc.*, 849 F.2d 464, 466 (10th Cir. 1988) (party not required to make futile argument to preserve issue lest precedent be overruled); *Furr v. AT&T Techs., Inc.*, 824 F.2d 1537, 1546 n.6 (10th Cir. 1987) (intervening decision contrary to previously controlling law of the circuit); *see also United States v. Charley*, 189 F.3d 1251, 1278-79 (10th Cir. 1999) (Holloway, J., dissenting) (new argument should be considered on appeal when intervening material change in the law could not reasonably have been anticipated, rendering earlier assertion of the issue futile and overruling previous standard).

intervening decision simply resolves an open legal question, continues the current direction of the law, or provides further support for an argument, or if the issue was one which the litigant should have been aware of earlier, we generally require the party to have preserved the issue in the district court proceedings and its first brief on appeal.[5]

The latter circumstance pertains here. *Williams* did not overrule or contradict controlling Supreme Court or Tenth Circuit precedent, and an argument about the punitive damages instruction would not have been otherwise futile. In fact, the *Williams* decision was foreshadowed by *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), decided four years earlier, where the Court held that "[d]ue process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis." *Id.* at 423. The Court reversed the punitive damages award because it did not believe the defendant "was only punished for its actions toward the [plaintiffs]," but rather was punished for "conduct that bore no relation to the [plaintiffs'] harm." *Id.* at 423, 422. Thus, as early as April 2003, defendants were on notice that jury

---

[5] *See Employers Reins. Corp.*, 358 F.3d at 776 (amended statute only provided further support for argument and did not justify considering new theory on appeal); *Peterson*, 849 F.2d at 467 (open state of the law on the issue and discretionary nature of the doctrine indicated party should have raised issue at the outset); *Lusby v. T.G.&Y. Stores, Inc.*, 796 F.2d 1307, 1312 n.6 (10th Cir. 1986) (denying benefit of the exception where the "issue was one which the parties should have been aware of and raised during the trial").

instructions permitting direct punishment for harm to non-parties or unrelated to the plaintiff may be objectionable. Notably, the extent and import of *State Farm*'s lessons were debated roundly in the federal courts after 2003,[6] and many courts soon came to read *State Farm* to mean what *Williams* ultimately confirmed it did mean.[7]

Further, Mr. Cook would likely be prejudiced by our consideration of the new issue at this stage. Because MSIC did not interpose an appropriate and timely objection to the district court's instructions on punitive damages, Mr. Cook had no opportunity to establish a record or suggest alternative jury instructions; and because MSIC did not raise the argument in its appellate briefs, Mr. Cook's only written response to MSIC's argument was by rule limited to filing his own Rule 28(j) letter. *See* Fed. R. App. P. 28(j) (limiting supplemental letter to 350 words). This defect – that both parties' arguments on a novel and complex issue are confined to the parameters of the Rule 28(j) letter – would also impair our

_____

[6] *See, e.g.*, *Williams*, 127 S. Ct. at 1061 (defendant objected to jury instruction); *Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007, 1015 (9th Cir. 2007) (defendant objected to jury instruction on the basis of *State Farm*); *cf. Southstar Funding, LLC v. Sprouse*, No. 3:05-CV-253-W, 2007 WL 812174, at *3 n.2 (W.D.N.C. March 13, 2007) (denying the defendant the benefit of the post-trial *Williams* decision in part because the defendant "did not raise a *Williams*-type objection" at trial).

[7] *See e.g.*, *Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 797 (8th Cir. 2004) (tying punitive damages to the harm suffered by plaintiff); *Johnson v. Ford Motor Co.*, 113 P.3d 82, 93-95 (Cal. 2005) (ruling punitive damages cannot be used to punish defendant for harm to non-parties).

consideration of the issue in this case and "run the risk of an improvident or ill-advised opinion, given our dependence as an Article-III court on the adversarial process for sharpening the issues of decision."[8]  *Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1278 (10th Cir. 1994) (White, J., sitting by designation) (internal quotation omitted).

C

In contrast to our *de novo* review of MSIC's legal arguments challenging the jury's punitive award, we review the district court's denial of MSIC's motion for remittitur or a new trial due to excessive damages under a highly deferential standard, reversing only if we can discern a "manifest abuse of discretion." *Vining v. Enter. Fin. Group, Inc.*, 148 F.3d 1206, 1216 (10th Cir. 1998).  Thus, the jury's award is inviolate unless we find it "so excessive that it shocks the judicial conscience and raises an irresistible inference that passion, prejudice, corruption, or other improper cause invaded the trial."  *Id.* (internal quotation omitted).

MSIC argues that the jury's award of $550,000 in compensatory damages, primarily for mental and emotional distress, is excessive.  Our case law, however,

---

[8]  MSIC also argues, for the first time on appeal, that the punitive damages award is unconstitutionally excessive according to the factors of *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996).  We may not consider this issue, however, because, again, MSIC did not raise it in the district court and offers no reason for us to stray from our general rule against considering issues raised for the first time on appeal.  *See Singleton*, 428 U.S. at 120; *Hicks*, 928 F.2d at 970.

supports Mr. Cook's contention that this is not necessarily so. For example, in *Vining*, which similarly involved an insurance denial of approximately $10,000, we upheld a $400,000 damages award for mental suffering as not excessive – and did so a decade ago. *Id.* at 1216-17; *see* Consumer Price Index, www.bls.gov/CPI (calculating $400,000 in 1998 equal to $531,612.27 in 2008). There, the deceased had purchased a credit life insurance policy to cover his car payments in the event of his death; upon his death, his widow sought to collect the $10,000 policy but the insurance company denied payment in bad faith. We concluded that Mrs. Vining did not need to show "severe mental distress or outrageous conduct," and that her testimony regarding "the distress she experienced as a result of . . . fighting the insurance company over the claim" was sufficient to support the $400,000 award for emotional distress. *Id.* at 1217. *See also Malandris v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 703 F.2d 1152, 1167-71 (10th Cir. 1983) (upholding $1,030,000 award for emotional distress where financial loss was only $30,000, on fraud and intentional infliction of emotional distress claims); *Chandler v. Denton*, 741 P.2d 855, 867-68 (Okla. 1987) (holding $600,000 award for intentional infliction of emotional distress and invasion of privacy not excessive).

Here, as in *Vining*, the plaintiff's distress resulted from an insurance company's refusal to pay benefits in the amount the plaintiff reasonably believed would be paid, and Mr. Cook's situation could be argued to be more egregious

because Mrs. Vining's liability was limited to $10,000, while at the time Mr. Cook learned of MSIC's fraud and his lack of insurance coverage, he faced an unknown and potentially escalating series of bills related to cancer treatment. Indeed, the jury heard testimony, to which MSIC does not now object, from Mr. Cook about the distress and worry he and his wife suffered upon learning they did not have adequate health insurance, facing unknown costs for cancer treatment (knowing Mr. Cook could not obtain other coverage because of his condition), and simultaneously dealing with the hospital's collection efforts.

While failing to distinguish adequately *Vining* or other authority supporting the jury's award, MSIC calls to our attention and asks us to rely on *Fitzgerald v. Mountain States Telephone and Telegraph Co.*, 68 F.3d 1257 (10th Cir. 1995) and *Wulf v. City of Wichita*, 883 F.2d 842 (10th Cir. 1989). But neither case suggests remittitur would be appropriate here. In *Fitzgerald*, the jury awarded the plaintiff $250,000 for emotional distress resulting from the defendant's refusal to contract with the plaintiff for allegedly discriminatory reasons, and we remanded for a new trial because the evidence suggested the award was the product of passion and prejudice. 68 F.3d at 1265-66. MSIC does not point to anything that would suggest the jury in this case was carried away by passion or some other improper motivation – if anything, the record suggests just the opposite conclusion, given that the jury found in MSIC's favor on Mr. Cook's bad faith claim. *See* Verdict Form, Aplt. App. at 262. In *Wulf*, the jury awarded the plaintiff $250,000 for

stress and frustration related to being fired in retaliation for exercising his First

Amendment rights, and we remanded for reconsideration of the damages based on

comparison to other cases from the previous four years in which the plaintiffs

were awarded significantly less (none of the awards approached even half of the

*Wulf* plaintiff's award) for similar discharges in violation of the First

Amendment. 883 F.2d at 875. Here, by contrast, MSIC has not presented us with

any factually similar cases to demonstrate that circumstances such as Mr. Cook's

are not compensated by awards this size. Accordingly, we cannot say that the

jury's award in this case is so extreme as to "shock the conscience."[9]

---

[9] In the district court, MSIC argued that evidence of Mr. Cook's annual income was relevant to damages because a person with his income would not experience much mental anguish over a $10,000 insurance dispute. The district court excluded evidence of Mr. Cook's income, reasoning that Mr. Cook did not seek lost earnings or contend he could not pay his hospital bill, his income had little relevance to his mental pain and suffering, and any probative value was substantially outweighed by the prejudice the admission of such evidence would cause to Mr. Cook. MSIC now asserts this ruling was erroneous because Mr. Cook's annual income was relevant not only to damages but also to demonstrate his sophistication in the insurance industry and counter his reliance on the agent's representations. As it happens, however, the jury had before it ample evidence of Mr. Cook's profession, success, and ability to pay, and MSIC has not presented us with any authority suggesting that the dollar amount of a plaintiff's income is relevant to mental suffering. We therefore conclude the district court did not abuse its discretion in excluding the evidence.

Concerning the punitive damages award, MSIC also renews the only argument it made for remittitur in the district court: that according to Oklahoma law, if we were to reduce compensatory damages, we must reduce punitive damages as well. *See* Okla. Stat. tit. 23 § 9.1(B)(2) (punitive damages may not exceed the greater of $100,000 or amount of compensatory damages). Because we have affirmed the compensatory damage award, this argument also fails.

- 22 -

\* \* \*

The judgment of the district court is affirmed.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge